BRADBURY MARBLE COMPANY, Respondent, v. THE LACLEDE GASLIGHT COMPANY, Appellant.

St. Louis Court of Appeals, December 17, 1907.

1. NUISANCE: Private Nuisance: Gas Plant: Consequential Damages. In an action by a marble dealer for damages caused by the defendant's discharge of substances from its smokestacks, in the manufacture of gas on a neighboring lot, which discharges were deposited upon the plaintiff's marble, where it was shown that the marble was not damaged unless such deposits were made upon it when wet the damage was not so remote as would authorize a nonsuit.

2. ——————: ——————: Right to Use One's Property: Limits of Right. Every one has the right to the reasonable enjoyment of his own property by putting it to any use he may choose, provided he violates no legal right of another, although the other may sustain damage by such use; but neither a person or a corporation has the right to maintain a nuisance, which has the effect of depriving an adjoining proprietor of the beneficial use of his land.

3. ——————: ——————: ——————: Gas Plant. The operation of gas machines is not a nuisance per se, and where they are not operated negligently, the question whether their operation constitutes a nuisance to an adjacent owner depends upon whether such operation interferes with the ordinary use and enjoyment of the latter's land.

4. ———: ———: ———: **Delicate Substances.** A person is not guilty of a nuisance in doing something upon his own premises which does not interfere with the ordinary enjoyment of life upon the premises adjacent, although his acts cause damage to particularly delicate articles used by the adjacent proprietor; where marble, stacked in the yard of a marble dealer, was easily stained by foreign substances the emission of substances from the smokestacks of an adjacent gas plant which would stain such marble was not necessarily a nuisance for that reason, if the emission of such substances did not interfere with the ordinary enjoyment of life upon the premises, the property being located in a portion of a city devoted to factories; whether the operation of the gas machines was a nuisance under such circumstances, was a question for the jury.

5. ———: ———: ———: **Practice: Instruction.** In an action for damages caused to plaintiff's property by a nuisance maintained by the defendant on the premises adjacent, an instruction which authorized a recovery without taking into consideration the question whether the use to which the plaintiff was putting its premises was a usual one, was erroneous.

6. ———: ———: **Nuisance: Prescription.** The right to maintain a public nuisance cannot be acquired by prescription, but the right to maintain a private nuisance can be acquired by adverse and exclusive enjoyment for the length of time prescribed by the Statute of Limitations for the acquisition of title to land by adverse possession.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

Reversed and remanded.

*Boyle & Priest* and *Robert E. Moloney* for appellant.

(1) The demurrer to plaintiff's evidence should have been sustained because there was a total failure of proof. (2) The demurrer should have been sustained for the further reason that the acts referred to in the testimony, are not the proximate cause of this damage. State v. Holman, 10 S. E. (N. C.) 758; State v. Ranken, 16 Am. 737. (3) Upon the facts defendant has obtained a prescriptive right to operate its plant,

128 App.—7

so far as plaintiff is concerned, and plaintiff cannot now by this action question this right, or presumed grant. Drew v. Hicks, 35 Pac. (Cal.) 563; Dana v. Valentine, 46 Mass. 8; Buten v. Railroad, 50 Mo. App. 414; Powers v. Railroad, 71 Mo. App. 540, 158 Mo. 87. (4) The plaintiff's instruction 1 given, is erroneous because it purports to cover the entire case, and at the same time ignores defendant's defenses, and is misleading. Commission Co. v. Bank, 107 Mo. App. 426; Link v. Westerman, 80 Mo. App. 592.

*Leonard Wilcox* for respondent.

(1) Defendant was maintaining a nuisance and the instructions for nonsuit were properly refused. Thomas v. Cannery Co., 68 Mo. App. 358; Paddock v. Somes, 102 Mo. 233; Fletcher v. Rylands, 3 H. of Lords Eng. & Irish App. Cas. 330; St. Helen Sm. Co. v. Tipping, 11 H. of Lords Cas. 642, 650; 1 Wood on Nuisance (3 Ed.), pp. 711, 717, secs. 517, 524; Tanner v. Waldbrun, 77 Mo. App. 266; Donahue on Gas, p. 401; Railway v. Baptist Church, 102 Fed. 91; Hauck v. Pipe Line, 153 Pa. St. 366; Fertilizer Co. v. Spangler, 86 Md. 562; Bohan v. Gas Light Co., 122 N. Y. 18; Robb v. Carnegie, 145 Pa. St. 338; 3 Blackstone, Com., 217, 218. (2) Instructions Nos. 4 and 5 were properly refused. No facts were alleged in the amended answer, nor were any facts put in evidence to warrant the giving of these instructions, or either of them. Smith v. Sedalia, 152 Mo. 283; 2 Wood on Nuisance (3 Ed.), sec. 714; Flight v. Thomas, 10 Ad. & El. 590, 592; Schumacher v. Shawhan, 93 Mo. App. 578; Howard Co. v. Railway, 130 Mo. 656. (3) Instruction No. 1 given was not error. Chilton v. St. Joseph, 143 Mo. 203; Lloyd v. R. R. Co., 128 Mo. 608; Noble v. Blount, 77 Mo. 239; R. S. 1899, sec. 865. (4) Refused instruction No. 6 was properly refused. Powell v. Brick Co., 104 Mo. App. 718; 1

Wood on Nuisance (3 Ed.), secs. 556-560; Fertilizer Co.
v. Spangler, 86 Md. 572.

STATEMENT.—Plaintiff and defendant are both Missouri corporations. Plaintiff is engaged in the business of buying, selling, polishing and cutting marble, granite and other stones for building and monumental purposes, and occupies a parcel of ground in block 47, city of St. Louis. The lot has a frontage of one hundred and twenty-five feet on the west line of Second street and a depth of one hundred and fifty feet, and is situated between Convent and Rutger streets. Defendant is engaged in manufacturing gas for lighting and heating purposes, and for many years, to-wit, since 1889, has maintained a plant for the manufacture of gas, east of and just across Second street from plaintiff's marble works and yard. It is charged in the petition, "That defendant in the process of manufacturing gas, as aforesaid on said premises, and in and with said works and plant, wrongfully caused to issue and proceed from said works and plant large quantities of offensive, deleterious, harmful and discoloring ashes, smoke, gases, soot, cinders, oil, dust, together with and mixed with carbon, iron, pyrites, oxydized pyrites which, on various days and times from December 20, 1903, up to the date of commencing this action, spread and diffused themselves and were, especially whenever the wind was blowing, or there were currents or air moving from the East in a westwardly direction, diffused and spread over and upon the lot or tract of ground in block No. 47, of said city of St. Louis, used, occupied by and in the possession of plaintiff, Bradbury Marble Company, as hereinbefore alleged, and settled and were deposited upon and against the stock of material aforesaid, consisting chiefly of marble then and there owned by and in possession of plaintiff and then and there kept and stored by it on said lot or tract of ground, whereby and in consequence

of which a large number of pieces and blocks of said marble, to-wit: 1167 pieces and blocks, so, and then and there, owned by and in the possession of Bradbury Marble Company, plaintiff, were stained, discolored and partially disintegrated and made and rendered unfit for use, unsalable and valueless in their said damaged and injured condition; and said stains, discoloration and disintegration penetrated said pieces and blocks of marble to such extent that he became and was necessary to do a large amount of extra sand rubbing thereto and thereon in order to restore said marble and make it again fit for use and salable; that by reason of the premises and of defendant's wrongful acts, aforesaid, plaintiff has been compelled to expend and has already expended a large sum of money, to-wit: the sum of eight hundred and fifty dollars and will hereafter be compelled to expend further large sums, to-wit: the sum of two hundred and fifteen dollars in doing extra sand rubbing to and upon said pieces and blocks of marble damaged and injured as aforesaid, by defendant's wrongful acts aforesaid, between the twentieth day of December, 1903, and the date of commencing this action; that is an additional sand rubbing thereon and thereto which would not have been necessary if it had not been for the damage and injury, aforesaid, caused to said marble by defendant; that the aggregate of said two sums, to-wit: the sum of ten hundred and sixty-five dollars, was, at all the times herein mentioned and is the reasonable cost and expense of doing said extra sand rubbing."

A bill of particulars, stating the damage to the marble, was filed with the petition. It is also stated in the petition, that plaintiff, in 1903, notified defendant of the harm which was being done its property, and presented a bill for the damages accrued up to that time ($470) but defendant refused to pay the same.

The answer was first, a general denial, and the following:

"Defendant, further answering, says that in its business of manufacturing gas, it is and was operating the plant complained of in plaintiff's amended petition.

"Defendant further states that it acquired the property in question from the St. Louis Gas Light Company, in or about the year 1889, and that said St. Louis Gas Light Company erected the works and plant thereon, and that said plant and works were operated by said St. Louis Gas Light Company and this defendant in the same manner in which they were operated during the times mentioned in plaintiff's amended petition, for a period of over twenty years prior to any complaint from plaintiff of the acts alleged in said amended petition to have committed by defendant.

"That the alleged damage and injury to plaintiff's stock of marble, if any, was caused by the acts of plaintiff in placing and leaving said marble uncovered and unprotected and exposed to the elements, when plaintiff well knew that by such exposure its marble would be injured and damaged thereby.

"That the alleged injury and damage to plaintiff's said stock of marble, if any, was greatly increased because plaintiff needlessly and carelessly exposed a greater part of said marble than was necessary; that is to say that instead of placing the small surfaces in an upright position, it placed the large surfaces upright.

"Wherefore having fully answered, defendant prays to be discharged with its costs in this behalf expended."

The reply was a general denial of the new matter in the answer.

Verdict and judgment for plaintiff for $1,000.01, which was reduced by voluntary remittitur to $975.

William A. Baehr was introduced as a witness by plaintiff, and testified he was defendant's chief engineer and had charge of all its manufacturing stations in the city of St. Louis; that Station A, located east of plaintiff's marble yards, is what is known as a water

gas station, composed of machines consisting of three parts, a generator, carburettor and a super-heater, and minutely described the construction of the several parts of the gas machines, the office each performed in the manufacture of gas, and described the process by which gas is made. Witness testified that in manufacturing water gas, coke produced from Pittsburgh coal is used, and "in making coal gas, the bituminous coal is put in large retorts, which are heated to a high temperature, in the neighborhood of 2,000 degrees F. and this high temperature distils the coal; in other words, it drives the gas out of it and the stuff that remains in the retorts after the gas is driven out of the coal is coke." Witness also testified as follows: "During the period that the gas is being made the stack valve prevents the gas from escaping into the air, it being closed. The gas has to pass during that time through a separate opening into purifying vessels. During the time when we wish to blast the machine up to heat it, the stack valve is opened so the products of combustion during the blasting or heating period will pass off into the air. The blast is introduced at the bottom of the generator and at the top of the carburettor and is produced by two fans, each eight feet in diameter.

The steam jet is introduced at the bottom of the generator during the gas making process, and goes upward through the coke, and out from the top of the generator into the carburettor.

To each machine, composed of the three parts already mentioned, there is a valve stock at the top of the superheater. These stacks are constructed of steel and are about twenty-five feet apart, thirty-five or forty feet in height, from the ground, and are located upon defendant's premises about twenty or twenty-five feet east of the east building line of Second street. During the blasting period the products of combustion in the machine are forced through these stacks; this material con-

sists mostly of carbonic acid; it also contains hydrogen and oxygen, and possibly a trifle of sulphur. On an average three machines are operated constantly, night and day, during which time they consume probably thirty thousand pounds of coke each."

Witness further testified that to make illuminating gas it was necessary to use a certain quantity of oil, which was sprayed into the gas machines; that the oil used is fuel oil, known as gas oil, and is a product of crude petroleum, after the kerosenes and gasolines have been distilled off; that "at the end of the gas making period there is always a certain amount of crude gas left in the machine when the stack valve is opened and the blast turned on; this portion of the gas is driven up through the stack and on meeting with the air it sometimes ignites.

The plaintiff made a complaint to defendant about some stains on its marble, and I went to its works three or four times for the purpose of determining the cause of these stains. Mr. Bradbury, the president of plaintiff corporation, and I looked at some of the substance on the marble, but I did not take any of it away, nor did I make any analysis. . . .

The plant of the N. K. Fairbank Soap Manufacturing Company adjoins plaintiff's premises directly on the north; these works have a number of smokestacks which emit smoke; and odors incidental to such an establishment are very noticeable in that vicinity.

The plant of the Heine Safety Boiler Works adjoins plaintiff's premises directly on the south. This concern conducts some of its operations in the public thoroughfare of Second street, such as putting in red hot rivets on boilers from which small particles or scales of steel fall on the street, when the rivets are hammered. These particles mix with the dust and other substances on the street which is blown about by the wind, as the street is not very frequently sprinkled, and generally

remains in a dusty condition.   Plaintiff leaves some of
its marble on the sidewalk of Second street.   .   .   .
There is absolutely no oxide of iron discharged from de-
fendant's machines.   The complaints of plaintiff as to
stains on its marble, originated after there was a rain-
fall.

The stacks of the Heine Safety Boiler Works are
within thirty feet of plaintiff's premises, whereas the
stacks of defendant are one hundred feet away.   There
is an iron smelter or foundry in the next block south of
plaintiff's marble yard, from the stacks of which dense
yellow and black smoke, together with flames, are emit-
ted.   The district where both plaintiff's and defendant's
plants are located is in a manufacturing part of the
city.

Plaintiff's evidence tends to show that when the
wind was from the east, ashes and fine particles, resemb-
ling coal, were blown from defendant's gas works on
plaintiff's lot and quantities of it settled on the marble
stacked in its yard, and when wet this black powder
would dissolve, spread and penetrate the marble for
about three-eighths of an inch, leaving a yellow stain
which had to be ground off to make the marble salable;
that the discoloring never occurred except after a rain.
Plaintiff gathered a quantity of this black powder and
submitted it to Dr. Keiser, chemist at Washington Uni-
versity, for analysis.   Dr. Keiser testified he made an
analysis of the powder submitted to him and found it
contained carbon, soot, iron and sulphur; that when the
powder was moistened, "it gave an acid reaction.   The
iron and sulphur slowly oxidises when it is wet, and it
forms what is called ferrous-sulphate, and this acid has a
sour taste and will eat into limestone or marble, and
stain it yellow."

Plaintiff's witnesses testified they watched this
black powder and saw that it came from defendant's
gas plant and settled on the marble stacked in plaintiff's

yard; that they dropped water on it and when the powder became wet it dissolved, spread and penetrated the marble and discolored it; that from February, 1903, to the date of the commencement of this suit, three thousand and ninety-eight square feet of plaintiff's marble stacked in its yard was discolored by this substance, and it cost about seventy cents per square foot to sand rub the stains out of the marble. They testified the ashes and black powder could be swept off the marble and that it did no harm until it became wet.

Defendant's evidence shows the N. K. Fairbanks Soap Factory is directly north of plaintiff's marble yard and that its smokestacks discharge substances which would naturally fall on plaintiff premises; and also that the Heine Boiler Company's shops are immediately south of plaintiff's yard, and that this company has forges for forging steel and uses compressed air to force draft through its forges; that the company does something to its boilers out on the street running between its plant and plaintiff's yard, and scales from these boilers fall upon the street, which is very seldom clean, and winds could carry dust charged with fine particles of iron to plaintiff's yard.

S. W. Forder, defendant's superintendent at the gas plant in question, testified he was a practical chemist and familiar with the substances discharged from defendant's plant or smokestack, and they consisted mainly of gases, which contained carbon dioxide, carbon monoxide, nitrogen and some oily vapors, which at times floated off with the gases into the air; that none of these substances would stain marble or have any effect whatever upon it; that the stains complained of were the result of the action of water on iron oxide, and that the discharges from the stacks of the Heine Boiler Company contained carbon and iron. The evidence of — Hawkins, read from an affidavit for a continuance, corroborates that of Forder.

The evidence shows defendant's machines, or machines of practically the same construction as the ones in use, were installed in 1892. The ones now in use were installed in 1902 or 1903. Plaintiff has occupied its premises continuously since 1891. Some of plaintiff's witnesses testified they had watched discharges from the smokestacks of the Fairbanks Soap Company and the Heine Boiler Company and they did not fall on plaintiff's yard; and that the dirt from the street in which the Heine Boiler Company sometimes riveted its boilers is prevented from getting into plaintiff's yard by a close board fence six feet high.

Plaintiff deals in Italian, Vermont and Georgia marble. The Vermont and Italian marble is kept under a roof for the reason it is more delicate than the Georgia marble and easier marred or stained by foreign substances. The Georgia marble is sawed into squares and blocks at the quarry before shipment. These blocks and squares require a sand rubbing of about one-sixteenth of an inch to polish them. The evidence shows plaintiff kept both polished and unpolished Georgia marble stacked in its yard.

BLAND, P. J. (after stating the facts).—At the close of plaintiff's case and at the close of all the evidence, defendant offered a demurrer to the evidence. The refusal of the court to grant its request is assigned as error. For the reason the powder deposited on the marble did no injury in itself and was harmless unless moistened, defendant contends the damages were not direct, and for this reason plaintiff cannot recover. Some of the cases hold to this doctrine, but the majority of the cases in the United States repudiate it and hold that consequential as well as direct damages may be recovered in this form of action. [See 21 Am. and Eng. Ency. of Law, p. 716, and cases cited in footnote 11.] There is some evidence tending to show the discharges

from the smokestacks of the Heine Boiler Company and the Fairbanks Soap Company may have contributed to the damage complained of, but there is no direct evidence that they did so. On the other hand, plaintiff's evidence tends to prove the discharges from defendant's works fell upon its yard, and these discharges, when wet by rain, dissolved, penetrated and stained the marble, hence we think the evidence was sufficient to authorize the jury to find the damages complained of were caused by discharges from defendant's plant alone, when combined with rain falling after the deposits were made. The action is not based on negligence but is for maintaining a private nuisance. The general rule is, "Although an act may be in itself lawful yet if it is done in a particular place and so necessarily tends to the injury and damage of another's property it constitutes a nuisance." [Joyce on Nuisances, sec. 26.] Wood says, "It may be stated, as a general proposition, that every enjoyment by one of his own property, which violates the rights of another, in an essential degree, is a nuisance, and actionable as such at the suit of the party injured thereby." [1 Wood on Nuisances, sec. 1.] This general rule is subordinate to the right of every one to the reasonable enjoyment of his own property by putting it to any use he chooses, provided the use to which he devotes it violates no legal right of another, however much damage the other may sustain therefrom. As where the damages are caused from the natural development of the land itself, or when one lives in a city and is bound to submit to the consequences of the obligations of trade carried on there. [1 Wood on Nuisances, p. 6, and cases cited in the text.] As a general proposition, neither a private person or a corporation has the right to erect and maintain a nuisance which has the effect of depriving the adjoining proprietor of the beneficial use of his land, without making compensation for the injury. [Paddock v. Somes, 102 Mo. 226, 14 S. W. 746; Powell v. Brick & Tile Co.,

104 Mo. App. 713, 78 S. W. 646; Chicago G. W. Ry. Co. v. Church, 102 Fed. 85; Bohan v. Gas Light Co., 122 N. Y. 18; Hauck v. Tidewater Pipe Line Co., 153 Pa. St. 366.] The operation of defendant's gas machines was lawful and hence not a nuisance *per se.* There is no evidence that the machines were operated in a negligent or unskilful manner, or that they were in themselves obnoxious. The question, therefore, is whether or not their operation interfered with the ordinary use of plaintiff's yard, or violated any of his legal rights.

The case of Robinson v. Kilvert, 58 L. J. Rep. (Ch. Div.) 392, was a suit by a tenant against his landlord for loss caused by an alleged nuisance maintained by the landlord. The facts were the tenant had leased of the landlord a warehouse, in which he stored large quantities of brown and tissue paper. Under the wareroom was a basement, in which the landlord maintained a heating boiler. Heat from this boiler heated the wareroom to about eighty degrees Fahrenheit. The heat injured the brown paper by drying it out and reducing its weight, thereby preventing it from acquiring weight by absorbing moisture which it otherwise would have acquired in a moist atmosphere. On these facts, COTTON, J., at pages 394-6, said:

"It has been put before us on the ground that what has been done by the defendants is a nuisance, because it interferes with the user by the plaintiff of his premises. It is to be noticed that the heat raised in the room of the plaintiff is not very considerable—it has never exceeded eighty degrees Fahrenheit on the floor, and is generally considerably below. A question of nuisance must be a question of degree. If a person does a thing which is in itself noxious, or which interferes with the ordinary user of a house or building, that is a nuisance. But no case has been quoted, and I know of none, which lays down that where a person does something, not in itself noxious—e. g., the emission of poisonous fumes— he is

guilty of a nuisance, unless it is an injury to the ordinary enjoyment of life. But it would be wrong to say that a person can be guilty of a nuisance for doing something, not in itself noxious, and which does not interfere with the ordinary enjoyment of life, because it interferes with some particular delicate trade which is carried on by a neighbor; that would be throwing too great a burden on a man's neighbors." If the marble stacked in plaintiff's yard was of a delicate nature and easily stained by foreign substances, the case perhaps falls within that of Robinson v. Kilvert, supra. This case is authority for the text (21 Am. and Eng. Ency. of Law (2 Ed.), p. 658) where it is said: "The question of nuisance is not affected by the mere fact that the property injured consists of luxuries; but one who carries on an exceptionally delicate trade cannot complain of a lawful use of neighboring property, which would not injure anything but such a trade." The question is mainly one of degree and location, for what would be a private nuisance in one portion of a populous city, devoted to private residences, would not be one in a portion of the same city where a great number of factories had been in operation for a number of years. [Demarest v. Hardham, 34 N. J. Eq. 469; Ross v. Butler, 19 N. J. Eq. 1. c. 306; Owen v. Phillips, 73 Ind. 284.] However, in an action at law to recover for damages caused by a private nuisance, the question whether or no the acts complained of constitute a nuisance should be left to the jury, where the plaintiff's evidence tends to show his legal rights have been invaded by the defendant, resulting in damages. Plaintiff, we think, made out a prima-facie case, and therefore the demurrers to the evidence were properly overruled.

The court gave the following instruction for plaintiff:

"If from the evidence you find that during the time between December 20, 1903, and January 16, 1906, the Bradbury Marble Company, plaintiff herein, was occu-

pying and using in its business a certain lot of ground fronting on the west side of Second street in St. Louis, City Block bounded north by Convent street and south by Rutger street and east by Second street and was the owner of and in possession of a stock of marble which was located on said lot of ground; and that during the same period of time the Laclede Gas Light Company, the defendant herein, owned and was operating a certain gas plant and gas works which were situated on land fronting on the east side of Second street and situated in St. Louis City Block bounded north by Convent street and south by Rutger street and west by Second street; and that said plant and works were near Second street and were opposite to the said premises occupied by plain- tiff and to where said marble was located; and that dur- ing the period of time aforesaid said defendant caused or permitted carbon, iron, oil and sulphur to issue from its said plant and works, which were then, on certain day or days during said period, spread and diffused west- wardly across Second street over said premises occu- pied by plaintiff and were deposited or settled on said marble, thereby causing said marble or any of it to be so stained that it was materially damaged and made unfit for commercial uses in its stained condition; and that in consequence of such stains, plaintiff in order to restore said marble to a condition fit for commercial uses was compelled to incur and has incurred expense in doing an additional amount of sand rubbing over and above what it would have had to do if said marble had not been so stained, then your verdict must be for plain- tiff and you will assess the plaintiff's damages at a nomi- nal sum, say one cent, and also at such further sum, if any, as you may find from the eveidence was the reason- able expense or cost of doing any such additional sand rubbing, which you find was made necessary by stains which were made on and to said marble during the period of time between December 20, 1903, and January 16,

1906, and were caused by defendant's acts aforesaid."

Plaintiff had the legal right to stack its marble on its yard and to leave it uncovered. Defendant had the legal right to operate its gas machines, in a careful and skilful manner, and to discharge such substances therefrom as were not injurious to the neighboring property when used in the usual way. Therefore, if plaintiff is making an unusual use of its yard, in view of the fact that it is located in a district largely devoted to manufacturing purposes, or if the marble it stacks in its yard is of such a delicate nature as to become stained and injured from substances discharged from the smokestacks of factories by which it is surrounded, it ought not recover. The instruction authorized a verdict for plaintiff on the mere fact that plaintiff's marble was damaged by. discharges from defendant's plant and rain, totally ignoring defendant's legal right to operate its machines, and leaving out of view the question of whether or not the user to which plaintiff devotes its yard is a usual one, in the circumstances, and we think was erroneous in thus leaving out important, and perhaps controlling issues in the case.

The answer pleads a right by prescription in defendant to operate its gas plant. The evidence tends to prove that machines of practically the same pattern and operated in the same manner were installed more than ten years before the commencement of this suit. On this evidence, defendant asked the following instructions, which the court refused:

"4. Adverse possession is possession by one person which is inconsistent with possession or right of possession by another. In theory it is a possession founded in trespass originally, but available after the lapse of years by reason of an open, notorious and hostile occupation. To constitute adverse possession, it is necessary that the possession be actual, continuous, notorious and hostile, but all of these may appear from the nature and

circumstances of the possession. Actual in this sense means real, visible. Continuous means without interruption. Notorious means open, undisguised, generally known, and hostile means opposed and antagonistic to the claim of all others. Undisputed means not called in question.

"5. The court instructs the jury that although they may believe from the evidence that ashes, smoke, gases, soot, cinders, oil and dust did proceed from defendant's works and did damage plaintiff's stock of marble, from December 20, 1903, to the date this suit was instituted, yet if the jury further find from the evidence that defendant had for at least ten continuous years prior to any complaint from plaintiff, maintained its said works at the same location and that said works had during all that time, discharged ashes, smoke, gases, soot, cinders, oil and dust in the same manner that they were discharged from December 20, 1903, to the date this suit was instituted, and if the jury further find that the discharge by said plant of said ashes, smoke, soot, gases, cinders, oil and dust in said manner was adverse, notorious and undisputed, as defined in instruction numbered —, then their verdict must be for the defendant.

While the right to maintain a public nuisance cannot be acquired by prescription, the right to maintain or continue a private nuisance may be, that is, by adverse and exclusive enjoyment for the length of time prescribed by the statute of limitations for the acquisition of title to land by adverse possession. [21 Am. and Eng. Ency. of Law (2 Ed.), 734-5.] There is evidence from which a jury might have drawn the inference that plaintiff could have maintained an action against defendant for maintaining the nuisance charged in the petition at any time within ten years next before it commenced this suit, and the above refused instructions should have been given. According to our views as herein expressed,

we think the court also erred in refusing the following instruction asked by defendant:

"6. The court instructs the jury that in determining whether the acts complained of constitute a nuisance, they must take into consideration the locality of the business of plaintiff and that of defendant, the nature of the business that is being conducted by defendant, the character of the machinery he is using, the manner of using the property producing the alleged injuries, and you may also consider the kinds of business, if any, which are being conducted and carried on in the vicinity of these premises."

The instructions given by the court for defendant, we think fairly submitted to the jury all other phases of the defense. For errors noted, the judgment is reversed and the cause remanded. All concur.