RAY et al. v. NANNEY.—114 S. W. (2d), 51.

Western Section.  December 11, 1937.

Petition for Certiorari denied March 5, 1938.

W. G. Timberlake and S. J. Everett, both of Jackson, for contestants.

Pigford & Key, Roger Murray, Hughlon Akin, and John F. Hall, all of Jackson, for proponents.

KETCHUM, J. This is an appeal by the contestants from a verdict and judgment sustaining a certain writing as the valid nuncupative will of W. S. Davis, deceased, on an issue of devisavit vel non. This is the second appeal of the case. On the first trial a motion of the contestants for a directed verdict against the will was sustained; on appeal to this court, this judgment was reversed in an opinion by Special Judge Sanford, and the cause was remanded for a new trial; and a petition to the Supreme Court for a writ of certiorari was denied in a memorandum opinion by Justice De-Haven. On the second trial in the circuit court there was a verdict and judgment sustaining the will, but the trial judge granted a new trial upon the ground of error in the charge to the jury. On the third trial, the will was again sustained, and it is from this judgment that the present appeal in error is prosecuted.

The instrument offered for probate is as follows:

"W. S. Davis                          Request.

"Ernest Nannie can get what i have got. C. M. Case do you want Earnest Nannie to have what you have got    Yes i want Earnest to have everything that I have got

"Died November 30                      Mrs. Cora Dismukes
"This the 1 of De-                        Travis Lee
     cember 1932.                      C. M. Case."

As indicated on the face of the instrument, Davis died on the 30th day of November, 1932, and the memorandum was put in writing on the following day. It was written by C. M. Case, one of the witnesses, in the presence of Mrs. Cora Dismukes, another one of. the witnesses, and shortly thereafter was read to Travis Lee, the third witness, who agreed that it was a correct statement of what Davis said in their presence. Davis left a considerable estate, both real and personal. He lived on his farm near Pinson, in Madison county, with Mr. and Mrs. Dismukes. He was never married and was about 72 years of age at the time of his death. On November 25, 1932, he became ill, and was confined to his bed from that time until his death. Early in the morning of November 28th he sent his negro servant to the home of his neighbor and kinsman, Travis Lee, requesting him to come to his, Davis's, home. When Lee arrived, Davis told him that Camp Case, another neighbor, would be there in a few minutes, and asked Lee to have a seat. When Case came, and when he and Lee and Mrs. Dismukes were all present in the room, Davis expressed some concern about his condition; he asked them if they thought he had pneumonia; said that his chest was burning; that being a fleshy man, he thought if he developed pneumonia he would die. And he said if anything happened to him he wanted Ernest Nanney to have what he had. Camp Case asked him if he wanted Ernest to have everything he had, and Davis replied, "I mean everything," and he added, "if it is necessary, I want you all to swear to that."

Ernest Nanney was Davis's illegitimate son, and so far as appears from the record, was his only child. Nanney had lived in New Orleans since 1914.

Davis either had pneumonia at the time, or developed it later, and died two days later.

The witnesses are in positive agreement as to who was present and as to what Davis said at the time he called upon them to witness his statement; the slight discrepancies in their testimony are such as tend to corroborate, rather than to weaken, their testimony. They were all disinterested witnesses, and all agree that Davis was of sound mind at the time. None of them had ever heard of a nuncupative will, and all thought that in order to be valid a will had to be in writing and signed by the testator, and witnessed Mr. Ray Wisdom, of Jackson, was appointed administrator of the

estate, and talked to these witnesses, or certainly to some of them, but they did not tell him about this will because they did not think it could be proved as his will. They did tell Ernest Nanney about it when he came to Jackson two or three months later.

The facts are more fully detailed in the opinion of Special Judge Sanford filed on the former appeal.

Section 8094 of the Code provides:

"No nuncupative will shall be good, where the estate exceeds two hundred and fifty dollars, unless proved by two disinterested witnesses present at the making thereof; and unless they, or some of them, were especially requested to bear witness thereto, by the testator himself; and unless it was made in his last sickness, in his own habitation or dwelling house, or where he had been previously residing ten days, at least, except he be surprised by sickness on a journey or from home, and dies without returning to his dwelling."

Construing this statute, the Supreme Court, in the memorandum opinion by Justice DeHaven, say:

"The following, under the above statute, are the essentials of a valid nuncupative will:

"(1) Two disinterested witnesses present at the making thereof; (2) They, or some of them, must have been especially requested to bear witness thereto by the testator himself; (3) It must have been made in his last sickness, in his own habitation or dwelling house, or where he had previously been residing ten days, at least; except he be surprised by sickness on a journey, or from home, and dies without returning to his dwelling.

"That Case, Lee and Mrs. Dismukes were present at the time of the above declarations by deceased, and that they are disinterested witnesses, is shown in the proof.

"That the declarations were made in his last sickness, in his own habitation, is shown in the proof.

"Thus the first and third of the statutory requirements are proven by Case, Lee and Mrs. Dismukes.

"With respect to the second of said requirements, the testimony of Case, Lee and Mrs. Dismukes, if believed by the jury, was sufficient to establish in law, that they, or some of them, were especially requested to bear witness to the disposition of deceased's property. While the deceased did not use the word "will," and while the three witnessess were ignorant, at the time, of the fact that a will could be made orally, under certain conditions, never having heard of a nuncupative will. nevertheless, if the conditions of the statute were, in fact, met, then a valid nuncupative will resulted.

. . .

"That Mr. Davis was disposing of his property in the face of apprehended death is certain; that his statement, *'if it is necessary,*

*I want you all to swear to that'* is equivalent to requesting them to bear witness to such disposition; in fact, he was asking that they, if necessary, swear to such disposition.''

Counsel for the proponents say that this is the law of the case on this appeal, and conclusive on this hearing as to both the law and the facts. On the former appeal the case was remanded for a new trial, and the evidence on this trial is not the same as that heard on the former trial. The jury, however, by their verdict, have found that all the essential facts necessary to sustain the will have been satisfactorily proved, so it is not necessary for us to hold that the finding on the facts on the former appeal is conclusive in this appeal.

█ █ It is well settled that each of the three elements enumerated by the Supreme Court as essential to the making of a valid nuncupative will must be established by clear, cogent, and convincing proof; and that a failure to establish any one of said essential requirements of the law by such evidence will be fatal to the establishment of a valid will. The Supreme Court, in their opinion, say:

''Defendants rely on the principle that a nuncupative will is required to be proved by evidence more strict and stringent in every particular than the making of a written will. Ridley v. Coleman, 33 Tenn. (1 Sneed), 616; Smith v. Thurman, 49 Tenn. (2 Heisk.), [110] 114; and other cases. Unquestionably the rule is as contended for by defendants, and the trial judge, had the case been permitted to go to the jury, should have so charged.''

This is, therefore, the law of the case as to the quality of proof necessary to the establishment of such a will.

█ The contestants' second assignment of error is that the trial judge, after stating the issues raised by the pleadings, erred in instructing the jury as follows:

''These pleas cast upon the plaintiff what is called the burden of proof, and before you would be warranted in finding the issues in favor of the plaintiff, it. is incumbent upon the plaintiff to show to the jury by a preponderance of the evidence all of the material facts necessary to make out the plaintiff's case.

''By a preponderance of the evidence is meant the greater weight of the evidence. That is not necessarily determined by the fact that a particular number of witnesses, or a given number of witnesses, or a greater number of witnesses, testify to a particular fact, or particular state of facts, but it means that the evidence offered in behalf of a proposition has a greater weight, or a more convincing effect upon your minds, than the evidence offered in opposition to it.

. ''The facts necessary to make out the plaintiff's case are contained in the plaintiff's contention in the case, and that contention

is this: That W. S. Davis was a resident of Madison County, Tennessee, and was the owner of personal property exceeding in value $250.00; that in the last sickness of the said W. S. Davis, in his own habitation or dwelling house, on November 28, 1932, the said W. S. Davis executed the will in question in this case, in the presence ·of the witnesses, Mrs. Cora Dismukes, Travis Lee and C. M. Case; that each of said witnesses was disinterested in the estate of the said W. S. Davis; and that the said witnesses, or some of them, were especially requested to bear witness thereto by the said W. S. Davis; and that the said W. S. Davis at the time, intended to make a will and to make a testamentary disposition of his property, and that the said W. S. Davis died on November 30, 1932, and that thereafter, on December 1, 1932, the will in question was put in writing by one of the attesting witnesses thereto.

"If the plaintiff has shown all of these facts to the jury by a preponderance of the evidence, then you should find by your verdict that the will in question is the last will and testament of W. S. Davis, deceased, and you verdict will be for the plaintiff. If the plaintiff has failed to show these facts, or any of them, by a preponderance of the evidence, or if the evidence equally balances as to whether such facts, or any of them, are true, or not, then you will find by your verdict that the will in question is not the last will and testament of W. S. Davis, deceased, and your verdict, in that instance, would be for the defendants."

The criticism of this portion of the charge is that it was confusing to the jury in that it instructed them that they should return their verdict for the plaintiff if they found that all the requirements of the law necessary to establish a valid nuncupation were shown by a preponderance of the evidence; which could not be reconciled with the correct statement of the law as given in the opening part of the charge, in which he instructed the jury that "the making of a nuncupative will should be well guarded and clearly made out according to the safe-guards set up in the law;" and that the essential requirements of the law "must be established by clear, cogent and convincing proof; and a failure to establish either of said three essential requirements of the law by strict and undisputable evidence is fatal to the establishment of a valid nuncupation;" and that "the making of a nuncupative will requires to be proved by evidence more strict and stringent in every particular than the making of a written will."

We do not think the charge is open to this criticism. The first part of the charge deals with the quality or character of evidence essential to the establishment of a valid nuncupative will, and the latter part deals with the weight or degree of such evidence. Only a preponderance of evidence is required, but it must be evidence that is clear, cogent, and convincing, or satisfactory, in character.

In the usual civil case, the jury may return a verdict in favor of that party whose theory or contention is supported by a preponderance of the evidence without regard to whether such evidence is clear, cogent, and convincing, or satisfactory. The rule is aptly stated by Justice Wilkes in Knights of Pythias v. Steele, 107 Tenn., 1, 9, 10, 63 S. W., 1126, 1128, in the following language:

"The law does not require that any theory or contention of either party in a civil suit shall be freed from doubt, suspense, or uncertainty; that the evidence must set the minds of the jury at rest; that it must be clear and plain, . . . but merely that the contention shall be supported and made out by a preponderance of the testimony, although the jury may nevertheless have some doubt or uncertainty, and their minds may not be at rest, and the fact may not be certainly fixed. A jury may consider that a fact is shown by a preponderance of the testimony when it falls short of making it clear and plain or removing doubt from their minds; but the rule is, if the evidence is of sufficient weight to preponderate in favor of any theory or contention, that, in a civil case, is sufficient."

And again he says:

"After all the evidence that can be produced is introduced, the jury may still be unsatisfied,—not convinced. Their minds may not be at rest. They may not be freed from doubt, uncertainty, and suspense. But still the jury may recognize that there is a preponderance of evidence, and on that they may base their verdict."

But there is another class of cases, such as cases to establish parol or resulting trusts, or to prove a lost will, in which a higher quality of evidence is required, and the present case falls within that class. In cases of this class, the law requires that the evidence must be "satisfactory," or "clear, cogent and convincing," or "more strict and stringent" than is required in ordinary civil cases. But where the evidence is of this "satisfactory," or "clear, cogent and convincing," or "more strict and stringent" character, a preponderance will support a verdict based thereon. The point is that in this class of cases the verdict cannot be based upon probabilities, or upon evidence which is not positive and convincing, but must be supported by the preponderance of evidence which is clear, cogent, and convincing, or satisfactory.

The requirement of the law with reference to the probate of nuncupative wills is accurately stated by the court in Smith v. Thurman, 49 Tenn., 110, 2 Heisk. 110, 114, 115, in an opinion by Justice Deaderick, as follows:

"The provisions of the statute in regard to nuncupative wills have been strictly enforced by the courts; and they have generally adopted a rigid and strict construction in regard to them. It must

appear that all the requirements of the law have been complied with.

"Independent of the statute of frauds, the factum of a nuncupative will requires to be proved by more strict evidence than a written one. The testamentary capacity, the animus testandi, and the rogatio testium, at the time of the alleged nuncupation, must appear by the clearest and most indisputable testimony. Red. on Wills, part 1, 187; 1 Wms. on Exrs., 105."

Although the law exacts that every essential element of the statute shall be proven by evidence of a clear and convincing character, to the end that loose or casual statements of the decedent as to his wishes may not be admitted to probate as testamentary, it is not required that every element of the statute must be proven absolutely, or beyond a reasonable doubt, or by any greater weight of the evidence than a preponderance.

In Bank of Commerce & Trust Co. v. Stavros, 20 Tenn. App., 662, 666, 103 S. W. (2d), 593, 595, the court after quoting from Gass' Heirs v. Gass' Executors, 22 Tenn., 278, 3 Humph. 278, in which it was said that the fact of insanity must be established by the "clearest and most satisfactory proof," said:

"Just what is meant by the 'clearest and most satisfactory' evidence is not entirely free from confusion. The term of 'clear and satisfactory' evidence is frequently used. Some of the textwriters seem to consider that it is the equivalent of proving the fact beyond a reasonable doubt. It is the general rule in practically all jurisdictions, and especially in Tennessee, that, where the burden of proof is upon a party to prove a fact or state of facts, this burden is met by a preponderance of the evidence. In other words, under the general rule, the evidence must preponderate in favor of the person relying upon a fact or a condition in all civil suits. It is only in criminal cases in Tennessee that the fact shall be proven to the satisfaction of the jury beyond a reasonable doubt. In certain classes of cases, as for instance, where it is sought to set up a parole trust, the evidence in support thereof shall be clear, cogent, and convincing."

In that case error was assigned upon the refusal of the court to charge the jury, at the request of the proponent, that the burden was upon the contestant to show the lack of mental capacity at the time of the execution of the will by clear and satisfactory evidence. It was held that it was not error to refuse this request, although its accuracy was not questioned.

It was said:

"The general charge of the court on the same subject did not use the words 'satisfactory proof' or 'clear and satisfactory proof,' but did clearly charge that the burden of proving the mental incapacity of the testator was upon the contestant, and that the evi-

dence would have to preponderate in favor of that alleged fact; to warrant the jury in returning a verdict in favor of the contestant.''

And the court quotes to same effect from the opinion in Hager v. Hager, 13 Tenn. App., 23, 34.

The court in the present case does charge the jury that all of the essential elements of the statute relating to the probate of nuncupative wills must be proven by ''clear, cogent and convincing evidence,'' and by ''evidence more strict and stringent in every particular'' than is required in the making of a written will; and that ''a failure to establish either of said three essential requirements of the law by strict and indisputable evidence is fatal to the establishment of a valid nuncupation.'' It was sufficient that all the requirements of the statute be proven by the preponderance of this clear, cogent, and convincing evidence, and there is no reversible error in the charge complained of.

There are other assignments complaining of error in the charge as given, and in refusing special instructions requested by the contestants; we have examined them carefully and find no merit in them and overrule them without discussion.

We think the charge as given was full and complete, and accurately submitted to the jury the questions to be determined by their verdict. We have also examined the evidence and are satisfied that the verdict is amply supported by evidence that is clear, cogent and convincing.

The judgment of the circuit court is accordingly affirmed, at the cost of plaintiffs in error and their surety.

Affirmed.

Senter and Felts, JJ., concur.