Walter J. HUTER and Cora Huter,
Respondents,

v.

Truman BIRK and Shirley Birk,
Appellants.

No. 57627.

Supreme Court of Missouri,
Division No. 1.

May 13, 1974.

Motion for Rehearing or for Transfer to
Court En Banc Denied June 10, 1974.

Stephen E. Strom, Strom & Strom, Cape Girardeau, for respondents.

Albert C. Lowes, Buerkle, Buerkle & Lowes, Jackson, for appellants.

WELBORN, Commissioner.

Action arising out of dispute over the right of respondents to use a private road across land of appellants. By Count I of

their petition respondents sought a decree declaring their title by prescription to a permanent easement for the unimpaired use of the road across the land of appellants. Trial of issues resulted in verdict for respondents. Respondents' petition also contained three other counts, to be discussed more fully below, on which they sought injunctive relief and damages. Trial to court of those issues resulted in injunctive relief in favor of respondents, but no monetary judgment was awarded. By notice of appeal filed prior to January 1, 1972, the appeal was lodged in this court.

This is the second appeal in this dispute. A judgment in favor of respondents at an earlier trial was reversed by this court because of error in submission of respondents' claim as based upon a way of necessity. Huter v. Birk, 439 S.W.2d 741 (Mo. 1969).

The parties are owners of adjoining farms in Cape Girardeau County. Respondents' 156-acre farm lies to the west of appellants' farm of 253 acres. Respondents' farm is bounded on the west and largely on the south by Whitewater Creek. The road in question runs from a county road which ends at the east line of the appellants' farm. The road runs west across appellants' land a distance of approximately 1500 feet to a point near the northeast corner of respondents' farm. The road then turns south at an angle of near 90° and runs through appellants' land near and approximately parallel to the farm's irregular western line for approximately 1000 feet, where it crosses respondents' line and enters their property.

Both farms were owned by Strong in 1918, when he conveyed the 156 acres now owned by respondents to Zeller. The Zeller residence was some 500 to 600 feet south and west of the point where the road crossed into their land. There was also a residence on the portion retained by the Strongs. It was located near the road here in question, 500 to 600 feet to the north of the point where the road entered the Zeller land.

The Zellers occupied the residence on their land until 1949. Since then no one has lived there. The residence on the Strong property was occupied by tenants, beginning prior to 1920. The respondents, Huters, rented the Strong farm for about six years in the early 1950's. The appellants, Birks, rented the Zeller farm from 1951 to 1960.

In 1956, the Birks bought the farm they now own from the Strong heirs. They have lived on the farm since then. In 1960, the Huters bought the 156-acre farm they own from Zeller heirs.

There was evidence of some roads into the Zeller-Huter farm which had long since ceased to exist. The evidence showed clearly that occupants of that farm had used the road across the Strong-Birk farm at least as long as the two farms had been separately owned, or since around 1918. Mr. Huter testified that he had been familiar with the Zeller farm since around the time the Zellers bought it. He could recall having used the road to get to the Zeller farm since 1924 or 1925. He testified that there were no gates on the road until Mr. Birk erected one which precipitated this litigation. Other witnesses for plaintiffs who were familiar with the road and its use by the Zellers recalled that there was a gate across the road in the vicinity of the place where the road turned to the south, a point now known as the "Huckstep Corner." Plaintiffs' witnesses testified that the gate had not been there since the early 1930's. The defendants' evidence was generally to the same effect, insofar as the gate at the Huckstep Corner was concerned, although Mr. Birk "thought" that when he went to the farm in 1941, he had to open a gate at the Huckstep Corner. All of the witnesses agreed that that gate had never been used to deny persons living on the Zeller farm the use of the road across the Strong farm.

There was conflicting evidence as to the presence of gates on the Strong farm, near the south end of the road. The evidence favorable to plaintiffs was that there was no gate in that area.

After he had bought the Strong farm and while he was still renting the Zeller farm, Mr. Birk had built a cattle guard across the road, not far from where it left the county road. Mr. Birk testified also that around 1958 he built a gate across the road near the south end, where it crossed the Zeller-Huter line. According to Birk, the gate was there when Huter visited the farm, looking into its purchase, around 1960. Huter denied that there was a gate at that location. Some time after Huter bought the Zeller farm, Birk did construct a cattle guard in that vicinity. That cattle guard fell into disrepair. Birk said that Huter was responsible for the damaged guard and he should replace it. Huter refused to do so and Birk erected a gate across the road at that point. That action precipitated the filing of this lawsuit in February, 1966.

The first contention on this appeal is that the trial court lacked jurisdiction to determine the controversy because of non-joinder of indispensable parties. The basis of this contention is that the Hucksteps have a recorded interest in the road but were not made parties. This contention was presented to the trial court by motion to dismiss which was overruled.

In 1961, the Birks conveyed to the Hucksteps a tract from their farm, located to the north and west of the point where the road here in question turns south, hence the "Huckstep Corner," referred to earlier. The deed gave the Hucksteps the right to use the road from their corner to the county road, for all purposes, with the Hucksteps to bear one third of the cost of maintaining the road.

■ Appellants rely upon Rule 52.04(a), V.A.M.R., as it stood when this case was tried. A new Rule 52.04 became effective December 1, 1972 and is here applicable. Rule 41.06. The new rule clarifies the question of joinder of parties. In this case, the absence of the Hucksteps does not prevent complete relief being accorded in this litigation to the parties before the court and the adjudication in no manner affects the interest of the Hucksteps in their right to use the road. There was no allegation that anyone had tried to limit the Hucksteps' use of the road or that the Hucksteps had any quarrel with the Huters' use of the road. Therefore, there was no reason to join the Hucksteps and no error in the trial court's ruling.

Appellants' reliance upon Rule 93.03, on the theory that Count I was in the nature of a quiet title action, is of no assistance. The Hucksteps do not have of record a claim adverse to that of the Huters.

Appellants' second point relates to the failure of the trial court to grant a continuance because of the absence of the Hucksteps whom defendants sought to subpoena as witnesses.

The motion for continuance, filed June 30, 1971, the day of the trial, alleged that subpoenas for the Hucksteps had been issued June 24 and that a non-est return on June 28 had been discovered on June 29. The motion alleged that the Hucksteps would testify that plaintiffs had discussed with them coming through a portion of their property at the Huckstep Corner with a road that would enter and run southward on plaintiffs' land from such point. The motion alleged that such proposal indicated that the plaintiffs knew or believed that they had no right in the roadway, particularly from where it turned south at the Huckstep Corner. The motion also alleged that the witnesses would testify to their contribution to the upkeep of the road and to their lack of knowledge of any contribution on the part of the Huters.

■ The trial court did not abuse its discretion in overruling the motion. The record does not show clearly how long the case had been set for trial. However,

counsel for plaintiffs, in the course of the argument on the motion, stated that plaintiffs' witnesses had been subpoenaed a month in advance of the trial. Defense counsel stated that he had talked to the Hucksteps a month or two previously, but took no steps to subpoena them until a week before the trial. He later learned they were away on vacation. The testimony which defendants stated they proposed to obtain from the witnesses was of doubtful value and perhaps even of questionable admissibility, particularly as an admission against interest. On this record, the discretion exercised by the trial court should not be disturbed. The situation here is wholly dissimilar from that presented in Missouri Public Service Company v. Argenbright, 457 S.W.2d 777, 785 [10], [11] (Mo.1970), where the court permitted a tardy amendment to the pleadings and then refused a continuance to permit the opposing party to consider and meet the changed issue.

■ Appellants next assert that their motion for a directed verdict at the close of all the evidence should have been sustained because the evidence failed to make a submissible case. The evidence on this trial was not appreciabley different from that at the prior trial. On the appeal in that case, this court found that the evidence did make a submissible case for plaintiffs. No good purpose would be served by again reviewing the evidence in detail. The holding on the prior appeal is determinative of the question in this case. Huter v. Birk, supra.

Appellants contend that they were deprived of their right to trial by jury on Counts II, III and IV of the action. Count II sought an injunction against defendants' interfering with plaintiffs' use of the road in controversy and $5,000 damages for prior acts of defendants disturbing such use. Count III sought an injunction against defendants trespassing on plaintiffs' land on a roadway, not the subject of the principal controversy. This count also alleged and sought damages of $100. Count IV sought an injunction against defendants diverting water on plaintiffs' lands. This count alleged and sought damages of $500. The trial court found for plaintiffs on all three counts and granted the injunctive relief prayed for. The trial court further found that plaintiffs' damages on all three counts had been nominal only and awarded no monetary relief.

■ The primary object of these three counts was injunctive relief. Count II was dependent upon the outcome of the legal issues properly submitted to the jury under Count I. Title was not the issue presented by the pleadings in Count III. The defendants did plead a 10-year user, but sought no adjudication of title. A controversy over an easement right in which no affirmative adjudication of the existence of an easement is sought does not involve title to real estate. See Bushman Investment Company v. McCaughey, 467 S.W.2d 865 (Mo.1971). Count IV did partake of the nature of a claim for trespass, but that fact would not preclude the equitable nature of the action which sought primarily injunctive relief. See Polich v. Hermann, 219 S.W.2d 849, 855 [8] (Mo.App.1949).

Counts II, III and IV sought relief against acts of a continuing nature and alleged lack of an adequate legal remedy. The petition stated claims for relief in equity on such counts. Andres v. Todd, 296 S.W.2d 139 (Mo.App.1956). None of the cases cited by appellants in support of their argument to the contrary involved actions to enjoin interference with an easement as continuing trespasses.

■ Appellants advance numerous complaints against the court's judgment. Some are directed at recitals as to the court's findings on Count I. Such recitals are not a part of the judgment and objections to them need not be considered.

Appellants attack the judgment entered on Count I, in which the court described the easement to which plaintiffs were enti-

tled. Appellants assert that the only judgment which the trial court could enter was one reciting the verdict of the jury. As authority for this contention, appellants rely upon Van Noy v. Huston, 448 S.W.2d 622 (Mo.App.1969), in which the court stated that when a verdict in a suit for money judgment did not include prejudgment interest, the court's judgment should not include such items as a part of the plaintiffs' recovery. The actual question presented in the case was of the right of the trial court to amend, nunc pro tunc, its judgment entered in such case, which did include interest.

This case does not involve a money judgment. What was said in Van Noy is of no assistance in determining what judgment should have been entered in this case.

■ Since the office of a judgment is to record the court's determination of the controversy submitted to it (46 Am.Jur.2d Judgments, § 1, pp. 313–314 (1969)), it is obvious that in a case such as this, where the issue submitted related to the rights of one party in and to lands of the other, the judgment must do more than simply recite the general verdict of the jury. Appellants' own authorities on the necessity of certainty of description in judgments involving interest in real estate refute their position on this complaint.

■ Appellants attack as beyond the pleadings and unsupported by the evidence the portion of the judgment which gives plaintiffs an easement 12 feet wide, "with such additional width as may be required to permit users of the road to pass each other and to go around obstructions temporarily blocking the road and to transport common farm machinery and other vehicles of all widths over the road." Appellants assert that plaintiffs claimed in their petition an easement 20 feet wide and that the petition, therefore, does not support the judgment entered. The allegation of the petition did not preclude a judgment awarding plaintiffs an easement of less than 20 feet in width. Roberts v. Quisen-

berry, 362 Mo. 404, 242 S.W.2d 26, 29 (1951). Contrary to the situation in Brotherton v. City of Jackson, 385 S.W.2d 836 (Mo.App.1965), where the court set aside a decree establishing a boundary line which was wholly unsupported by evidence, the evidence in this case does support the finding and judgment of the trial court as to the width of respondents' easement.

Appellants also attack the judgment on the grounds that it is not sufficiently definite in its description of the easement. Appellants made no attack upon plaintiffs' petition which described the road as "commencing at the end of a public county road near the northeast corner of Defendants' farm and running westerly to near the west line of Defendants' farm and thence running southerly and thence southwesterly until it enters Plaintiffs' farm * * *." The judgment describes the easement as "located at the site of the present road leading to Plaintiffs' farm over and across the lands presently owned by Defendants," with reference to defendants' land as described in their deed, described by date and record.

■ The location of the road in question was not the primarily disputed matter. Defendants did offer evidence that the location. of the road had varied somewhat from time to time, but the jury verdict resolved that issue in favor of plaintiffs' evidence that throughout its long history the location of the road had been essentially unchanged. Exhibits introduced at the trial show a road, the surface of which has been graveled, and, in some areas, at least, ditched and fenced. In other words, the "present road" is well-defined and reference to it is not to some vague track across appellants' land. In the circumstances of this case, the judgment "is not so wanting in descriptive detail as to be either void or unenforceable." Allen v. Smith, 375 S.W.2d 874, 883 [23] (Mo.App.1964). As the court in that case pointed out (375 S.W.2d 883 (citations omitted)):

" * * * [L]ess detail and precision should be and is demanded in describing

and defining the route of a country road or way of access across a farm * * * than in fixing and limiting a driveway easement between city lots. * * * And the same detail and precision logically should not be, and usually is not, required with respect to the route of a long-established and well-defined road * * * as with respect to the route of a road not so established and defined. * * * "

As for the judgment entered on Count II, appellants attack the provision enjoining them from erecting gates across the road and imposing upon them the expense of maintaining any cattle guards they may erect, as authorized in the decree.

On the gate question, appellants rely on a statement found in Faulkner v. Hook et al., 300 Mo. 135, 254 S.W. 48, 50 (1923):

"There is ample authority for the proposition that the owner of the servient estate has a legal right to maintain gates at each end of a way acquired by prescription, or otherwise."

The question involved in Faulkner was whether or not the maintenance of gates negated a prescriptive easement. The court held that when the maintenance of the gates was not a denial of the right to use the way, their presence did not preclude acquisition of a prescriptive easement. The court noted that when a prescriptive right is established through restricted use by bars or gates, the right acquired is restricted to the same extent. This case presents the converse of that situation, the evidence believed by the jury having established an unrestricted use of the roadway for a period of at least thirty years.

Although the statement from Faulkner, above, relied upon by appellants, is correct as far as it goes, it is incomplete in that it failed to take note of the contrary authority on the proposition. See Annotation, "Right to maintain gates or bars across right of way," 73 A.L.R. 778, 788 (1931). The case first cited in Faulkner in support

of its statement is Luster v. Garner, 128 Tenn. 160, 159 S.W. 604. Subsequently, in Melton v. Donnell, 173 Tenn. 19, 114 S.W. 2d 49 (1938), the court held that the rule in Luster was applied to meet the equities of that case and that the reason for the rule had ceased. The court concluded:

"We are of opinion that under modern conditions the better rule is that which prohibits the servient owner from erecting gates or bars across the road where the owner of the dominant estate has used said road uninterruptedly under an adverse claim of right for [the period of prescription], or more, without gates or bars. The following authorities support this rule: Fankboner v. Corder, 127 Ind. 164, 26 N.E. 766; Shivers v. Shivers, 32 N.J.Eq. 578, affirmed in 35 N.J.Eq. 562; Hill v. Miller, 144 Ga. 404, 87 S.E. 385; Puryear v. Clements, 53 Ga. 232; Bolton v. Murphy, 41 Utah 591, 127 P. 335; Rogerson v. Shepherd, 33 W.Va. 307, 10 S.E. 632." 114 S.W.2d 51 [3].

On this record, the judgment of the trial court is not to be held erroneous. The judgment measures the rights of the respondents as they were acquired. McDougall v. Castelli, 501 S.W.2d 855, 859 [8, 9] (Mo.App.1973); Riggs v. City of Springfield, 344 Mo. 420, 126 S.W.2d 1144, 1149 [4, 5] (Banc 1939); Holian v. Guenther, 471 S.W.2d 457, 459 [1, 2] (Mo.1971).

Appellants question the portion of the decree with respect to cattle guards insofar as it requires them to maintain the guards at their expense. Inasmuch as the cattle guards are for the purpose of keeping appellants' cattle within appellants' property, the trial court did not err in imposing the expense of their maintenance upon appellants. See Massee v. Schiller, 243 Ark. 572, 420 S.W.2d 839 (1967).

Count III alleged that defendants were driving their machinery across plaintiffs' land and sought injunctive relief. This dispute related to defendants' use of a roadway south of the point where the road

which was the subject of the original dispute entered plaintiffs' farm. The calls of the parties' deeds at the point in question were identical, but three surveys had located a corner, based upon such calls, at three different places and the parties had been unable to agree upon a line. According to plaintiffs, defendants, at that corner, cut across plaintiffs' land at a point inside all three of the corners located by the surveys. Defendants by their answer alleged that the boundary between the two farms had been established for more than ten years but that plaintiffs were claiming land to the east of the established line, on the basis of surveys varying from such line. The answer requested a survey to locate the established line and for a declaration that such line was the true line between the parties' farms.

The trial court found the issue for plaintiffs and enjoined defendants from cutting across the corner described in the common line of the parties' deeds. Appellants attack that portion of the judgment on the grounds that their claim of adverse possession should have been sustained. Appellants' testimony on this issue is vague and does not warrant the rejection of the trial court's judgment.

By Count IV plaintiffs alleged that defendants had constructed mounds on their land which diverted surface water on to plaintiffs' land, causing ruts and gullies on plaintiffs' land. On conflicting testimony, the trial court resolved the issue in favor of plaintiffs. The record supports the judgment and this court will not reject the trial court's resolution of the conflicting testimony.

Appellants object to the assessment of the costs against them. On the record, the costs of this action were properly assessed against appellants. Rule 77.-06. There was no objection in the trial court to the costs as assessed. Rule 77.27. The cost bill has not been made a part of the record before this court. Therefore, there is no basis for either approval or disapproval by this court of any specific cost item. Thorpe v. Weismann, 148 Mo.App. 559, 128 S.W. 529 (1910).

Appellants' final attack is upon respondents' verdict-directing instruction. The instruction called for a verdict for plaintiffs if the jury found that "plaintiffs and those under whom they claim title have been in actual, open, notorious and continuous adverse use of the road for at least ten years before the institution of this suit on February 4, 1966."

Contrary to appellants' contention, this instruction did submit the ultimate facts, as required by MAI and no greater evidentiary detail was required in the instruction. Rule 70.01(e). The failure to place each of the elements submitted in separate numbered paragraphs is not reversible error. Nor is the instruction subject to attack as an abstract statement of law. It sets forth the ultimate facts, required for a verdict in favor of plaintiffs.

Appellants attack the instruction for its failure to include the terms "hostile," "exclusive" and "under a claim of ownership." Any such deficiency was supplied by an instruction offered by defendants and given by the court which defined "adverse use" as "hostile to * * * the right of ownership of the holder of the paper title" and "under a claim of ownership." As appellants' instruction recognizes, those are matters which go to make up "adverse use," as submitted in respondents' instruction, and are not separate elements of plaintiffs' right to recovery, so that defendants' instruction is not used to supply necessary elements of plaintiffs' right to recovery, omitted from plaintiffs' verdict-director. The failure to require a finding that plaintiffs' possession was exclusive was not error. Majors v. Bush, 356 Mo. 17, 200 S.W.2d 892, 896 (1947).

None of the language of plaintiffs' verdict-directing instruction required definition by plaintiffs. Defendants did define

the term "adverse use" and if they felt other terms required definition, similar instruction should have been submitted by defendants. Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 973 [13–16] (1929). The case of Bradbury Marble Co. v. Laclede Gas Light Co., 128 Mo.App. 96, 106 S.W. 594 (1907), relied upon by appellants, holds that in the facts of that case, defendant was entitled to an instruction setting forth its defense based upon prescriptive right. The opinion does set forth the improperly refused instruction, which did contain definitions of the terms used, but the case is not authority for the proposition that an instruction is required to be in such form.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.