**Harley E. WILT and Gladys Wilt, Appellants,**

v.

**Melton V. WATERFIELD, Appellant and Third-Party Plaintiff**

**(Charles Morgan and St. Clair Investment Company, Respondents and Third-Party Defendants).**

Nos. 22392, 22393.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1958.

Irving Achtenberg, Kansas City, for Melton V. Waterfield.

Boyd Ewing, Robert L. Ewing, Ewing, Ewing & Ewing, Nevada, for respondents.

SPERRY, Commissioner.

This suit was instituted by Harley E. Wilt and his wife, Gladys, against Melton V. Waterfield to recover damages for breach of a real estate sales contract. Waterfield filed a third-party petition against Charles Morgan and the St. Clair Investment Company.

Upon motion of the Wilts a separate trial of their cause of action against Waterfield was ordered. In that trial the Wilts recovered judgment against Waterfield in the sum of $7,700. Waterfield appealed to the Supreme Court and on November 8, 1954, the judgment was affirmed. See Wilt v. Waterfield, Mo., 273 S.W.2d 290.

The petition of the third-party plaintiff, Melton V. Waterfield (hereinafter referred to as plaintiff) was in two counts. Count I alleged that on September 5, 1951, plaintiff Waterfield agreed in writing to sell his farm located in St. Clair County, Missouri, to the Wilts for $19,000; that on September 18, 1951, third-party defendant, Charles Morgan, acting on behalf of St. Clair Investment Company, by fraud and deceit induced plaintiff to breach his contract with Mr. and Mrs. Wilt. It prayed for actual damages in the amount of the Wilts judgment ($7,700), together with certain expenses, and also for punitive damages.

Count II alleged that defendant Morgan, as agent for plaintiff, sold plaintiff's farm on September 19, 1951, for $26,000 but concealed the selling price, representing to plaintiff that the selling price was $22,000 and accounting for $22,000, thereby converting the remaining $4,000 to his own use, in violation of his duty as trusted agent for plaintiff; that thereafter plaintiff discovered the true selling price and confronted Morgan therewith; that Morgan thereafter further accounted to plaintiff for $1,724.55, but failed to account for $2,275.45. It prayed for actual damages in the sum of $2,275.45, and also for punitive damages in the amount of $10,000.

At the close of the evidence the trial court sustained St. Clair Investment Company's motion for a directed verdict and dismissed plaintiff's petition as to it. The issues on both counts were submitted to the jury as to defendant Morgan. Verdict on Count

I was for defendant. On Count II plaintiff received a verdict for $2,275.45 actual and $5,000 punitive damages. Plaintiff's after trial motions were overruled by the Court. Defendant Morgan's motion for a new trial on Count II was sustained. Plaintiff Waterfield has appealed from the order granting defendant a new trial on Count II, and defendant Morgan has undertaken to appeal from the order of the trial court refusing to enter judgment for him on said Count II.

The evidence was that plaintiff Waterfield, a cab driver, had lived in Independence, Missouri, thirty years, had a third grade education and could only read and write a little. On the side he had bought houses here and there, fixed them up and sold them. He had never been in Osceola, Missouri, or known defendant Morgan prior to 1950. Morgan was a licensed real estate broker for over twelve years, was secretary-treasurer of St. Clair Investment Company and President of the Osceola Bank, as well as an officer of other banks.

In 1950 plaintiff bought a 525-acre farm near Osceola, dealing with defendant Morgan. After purchasing the first tract he received a series of letters from Morgan relative to the purchase of an adjoining tract of 300 acres. As a result plaintiff purchased the second tract in November, 1950. The second deal was also handled by Morgan. Plaintiff had no other real estate agent or attorney in either deal. He had neither abstract examined because Morgan said it would "be just wasting money" as "the titles were good."

On June 17, 1951, plaintiff signed a listing agreement covering the two tracts with Earl Allen, an agent with United Farm Agency, in Weaubleau, Missouri. This agreement called for a $19,000 sale price and a 10% agent's commission. On September 5, 1951, Allen called plaintiff on the telephone and said he had a buyer. Plaintiff went to Weaubleau the next day, September 6, and signed a sales contract with Mr. and Mrs. Wilt, the contract providing

for a $19,000 price and with a 10% forfeiture clause. Plaintiff and Allen then went to Osceola to get the abstracts from Morgan. Plaintiff testified that "Mr. Morgan refused to let us have them." According to Allen, Morgan said "that I could not have the abstracts till the $4500 was paid." It appears that there was a mortgage on the land securing a note for $4,500 payable to the St. Clair Investment Company. Failing to get the abstracts, plaintiff returned to Independence. Mr. Allen also testified that he wrote to Mr. Wilt and told him what Morgan had said "but we didn't have time to get the money back."

The evidence further disclosed that about this time Mr. and Mrs. Windom, who lived in Amarillo, Texas, were interested in acquiring a farm in Missouri. They came to Springfield and there got in touch with a Mr. Oxsom, who was an agent of the Globe Realty Company. Oxsom showed them several farms, including plaintiff's. A neighbor told Mr. Windom that the place had been sold. Windom then suggested to Oxsom that he try to buy it from the purchaser. In two or three days Oxsom told Windom that he believed they could get the place and mentioned defendant Morgan and said Morgan would call and let him know. That evening (September 17, 1951) Morgan called and talked first to Oxsom. Windom testified that he heard Oxsom say on the telephone "Twenty-six Thousand" twice. Then Windom talked to Morgan. After this conversation had taken place Windom discussed with his wife and mother-in-law whether $26,000 was too much, since the farm had been priced to them at $22,000. They decided to take it, however, for $26,000 and the mother-in-law signed a real estate contract dated September 17, 1951 to that effect.

It also appears from the evidence that on the same day (September 17) defendant Morgan came to Weaubleau to see Allen. Allen testified that "Mr. Morgan told me that they had a buyer for the 825 acres for $26,000. He said 'Could you call your man

off and go along with us? We will split with you.' I says, 'I don't make my money that way.' "

Also on September 17, defendant called plaintiff on the telephone and said he was coming to Kansas City and wanted to see plaintiff. He came to Independence the next morning, September 18, and said he had a buyer, a Texas man, who was paying $22,000. Plaintiff testified that he said to Morgan that he didn't want to get into any trouble over the earlier deal, but defendant said it was a "phony" deal, and that he could get plaintiff out of it for $500 or $1000. Plaintiff signed a blank deed and delivered it to defendant.

The following day, September 19, the Windoms went with Oxsom to the St. Clair Investment office in Osceola to close the deal. Plaintiff was not present. Defendant filled out the blank deed at this time. Mr. Windom suggested putting the money in escrow, but defendant said: "We have had our lawyer examine the abstract and it is okay." Windom gave defendant two checks totalling $21,500 and assumed a $4,500 mortgage. Defendant held the deed and the checks, giving a receipt for the checks. After the sale had taken place, but on the same day, defendant wrote plaintiff a letter in which he stated "got checks today." No mention was made in the letter that the sale price had been $26,000. The following day, September 20, defendant purchased a cashier's check for $2,000 payable to Globe Realty Company (Oxsom) and one for $1,900 payable to Earl Allen.

On September 25, the purchaser's checks had cleared and defendant bought revenue stamps in the amount of $19.55, showing a consideration (less mortgage assumed) of $22,000.

On September 24, defendant called plaintiff on the telephone, but made no mention of the increase in the sale price. As a result of the phone call plaintiff met defendant on the same day near Clinton, Missouri, where defendant gave him a typed accounting which did not mention the increase in price, but showed the "agreed price" to be "$20,000." Defendant gave plaintiff a check for $13,335.45, which amount was in accord with the accounting, and another check for $1,000. Plaintiff testified that defendant said he was holding $2,000 in case something came up, but that he induced defendant to give him $1,000 and to only hold $1,000.

Sometime later plaintiff heard that the farm had sold for $26,000 and went to see defendant. Plaintiff testified: "I asked Mr. Morgan about it, if I was paying $7,000 commission and he said no. I says, 'Well, the man that bought the place told me he gave you $26,000 for it and could show the check for it as quick as I came back.' Q. What did Mr. Morgan say at that time? A. He said that was a bunch of baloney. He never got it."

On September 5, 1951, defendant mailed plaintiff a check for $1,000. The check was accompanied by a typewritten note which said: "Want to tell you the story when we get time. I have nothing to cover up but had some trouble in keeping your share of price received. I want nothing of yours and will see you about more which can be handed to you later."

In the meantime Windom, the purchaser, had gotten the abstracts and had an attorney examine them. The attorney required that a quiet title suit be brought, the decree being entered February 1, 1952. The expense of this suit and of bringing the abstracts down to date amounted to $275.45. This sum defendant paid and later charged to plaintiff.

On March 1, 1952, defendant sent plaintiff a letter mentioning for the first time a $26,000 sale price, accounting for the proceeds, and enclosing a check for $1,724.55. In the letter he stated: "As I explained the Springfield man (Oxsom) was not in accord with your getting the profit above $20,000, but did accept $2000 commission * * *." The letter also said: "The enclosed abstract bill which as I stated was nonessential * * *." In this settlement

defendant finally accounted for all the proceeds, except for the $2,000 paid to Oxsom and the $275.45 abstract bill.

As stated the jury found the issues on Count II in favor of plaintiff and awarded him $2,275.45 actual and $5,000 punitive damages. One of the reasons assigned by the trial court for granting defendant a new trial was that Instruction 5, the main instruction given on behalf of plaintiff, was erroneous. That instruction reads as follows:

"The court instructs the jury that if you find and believe from the preponderance of the evidence that defendant Morgan, while acting as agent for plaintiff, if you so find, received the proceeds of the sale to Clell Windom and wife of plaintiff's farm in evidence and wilfully, knowingly and intentionally concealed and withheld from plaintiff any part of said proceeds with intent to make a secret profit thereby and with knowledge that said proceeds were to go to plaintiff, if you so find, then your verdict shall be for the plaintiff and against defendant Morgan on Count II of plaintiff's petition."

Turning now to Count II of the petition we find the following allegations:

"That third party defendant Morgan on September 19, 1951, sold said farm aforesaid, for the sum of $26,000.00 but concealed said selling price from third party plaintiff, represented that said selling price was $22,000, converting the remaining $4,000.00 thereof to his own use and the use of St. Clair Investment Company, in violation of his duties as trusted agent for third party plaintiff.

"That thereafter third party plaintiff discovered the true selling price of said property and confronted third party defendant Morgan therewith on October 30, 1951; that thereafter third party defendant Morgan further accounted to third party plaintiff for an additional $1,724.55; that third party defendant Morgan failed to and continues to fail to account to third party

plaintiff for the remaining sum of $2,275.45 although demand has been made upon him to account for the same."

▆▆▆ It is a fundamental rule of law that an instruction submitting plaintiff's case must be in accord with the theory of his petition. White v. Thompson, Mo.App., 176 S.W.2d 53. The instruction violates that rule. The gist of plaintiff's claim as asserted in his petition was that Morgan had failed to account for $2,275.45 (the $2,000 paid Oxsom and the $275.45 abstract bill). The instruction is broader than the pleadings. It authorized a finding if defendant received the proceeds of the sale ($26,000) to the Windoms and "concealed and withheld *any part* of said proceeds with intent to make a secret profit * * *." On the face of the instruction defendant could have had a momentary intent and could have wilfully, knowingly and intentionally, concealed and withheld from plaintiff during such moment *any part* of the $26,000. Plaintiff, in his pleadings, stated that all of the $26,000 had been accounted for except $2,275.45, above mentioned. That was all that was in issue. It was improper to authorize a verdict on a finding that defendant had withheld "any part" of the proceeds of the sale of the land. The court did not err in granting defendant a new trial.

The other grounds assigned in the trial court's order as a basis for granting the new trial need not be discussed. The matters to which they relate will not likely arise again upon a retrial.

The defendant's appeal from the order overruling his motion for a directed verdict at the close of all of the evidence is dismissed because it is not an appealable order. Bailey v. Interstate Airmotive, Inc., 358 Mo. 1121, 219 S.W.2d 333, 335, 8 A.L.R.2d 710.

The order of the trial court granting defendant a new trial on Count II should be affirmed. Defendant Morgan's appeal should be dismissed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The order of the trial court granting defendant a new trial on Count II is affirmed. Defendant Morgan's appeal is dismissed.

BROADDUS, P. J., and CAVE, J., concur.

HUNTER, J., not sitting.