Walter J. HUTER and Cora Huter, Plaintiffs-Respondents,

v.

Truman BIRK and Shirley Birk, Defendants-Appellants.

No. 53957.

Supreme Court of Missouri, Division No. 1.

April 14, 1969.

Buerkle & Lowes, Albert C. Lowes, Kenneth L. Waldron, Jackson, for appellants.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for respondents.

WELBORN, Commissioner.

Action to determine rights of plaintiffs in a roadway across defendants' land and to enjoin interference with plaintiffs' right to use road. First count, based on claim of right by prescription, was submitted to jury which found for plaintiffs. Court entered judgment on verdict and also issued injunction. Defendants appeal.

Sometime prior to 1918, one Strong became the owner of a tract of land of unspecified acreage in Cape Girardeau County, bounded on the west by Whitewater Creek. In 1918, Strong's heirs conveyed the western 156 acres of the tract to Zeller. A public road ran to the vicinity of the northeast corner of the tract retained by Strong's heirs and lying to the east of the land conveyed to Zeller. A private road, beginning at the end of the public road, ran through the Strong tract in a westerly direction several hundred feet, when it turned in a southerly direction and ran some 1000 feet farther, through the Strong tract, to a gate in the eastern portion of the Zeller tract. This roadway, at the time of the Zeller purchase, provided access to the residence and farm buildings on the Zeller tract. The interest of plaintiffs, successors in title to Zeller, in this roadway as it runs through what was formerly the Strong property, now owned by defendants, is the subject of this litigation.

Just when this road had been built was not shown. One witness, born in 1899, remembered that it was there when he was a boy. He said: "Yes, as long as I remember the road was there in the neighborhood,

in the same place where it is at now." Members of the Zeller family lived on the "lower" farm until 1949 and farmed it until 1951. No one has lived on the farm since 1949. From 1951 to 1960, defendant Truman Birk rented the Zeller farm and farmed it. Plaintiff Huters acquired the "lower" farm from the Zeller family in 1960 and farmed it thereafter.

From 1919 to 1956, various tenants occupied the Strong or "upper" farm. Plaintiff Huter rented the upper farm from 1950 or 1951 until the Birks bought it in 1956. In 1956, the defendant Birk acquired the farm from the Strong family. The Birk family resided on the farm at the time of the trial. Access to their residence was by way of the road in question, to a point some 400 feet north of the southern end of the road, where a branch of the road ran to the Birk house.

All of the evidence showed that, from 1918 until 1966, when Birk built a gate across the road, the road provided the means of access to the lower farm. It was used by the owners and tenants of that farm and persons having occasion to go upon the farm. Horse-drawn vehicles, motor cars and trucks and farm machinery all reached the lower farm by this road. No witnesses in the trial knew of any other means of access to the lower farm.

There was some disagreement among the witnesses about the presence of a gate across the road on the Birk farm. Plaintiffs' witnesses testified that they never had to open a gate to get to the lower farm. Defendants' witnesses testified that there was a gate across the road not far from where it left the county road. One witness recalled seeing such a gate 30 years ago. There was some intimation that the gate was used to keep cattle off the roadway when they were driven to an area where a spring was on the north part of the Birk farm. No one testified to the presence of a gate across the road in recent years, until Birk built the gate in 1966.

After Birk bought the upper farm, he did construct two cattle guards across the road, one near the end of the county road and one near the entrance to the lower farm. The first was constructed in 1957, while he was still renting the lower farm. The second was built a year after Huter bought the lower farm. There is some indication that the difference between the parties over the use of the road arose when Huter damaged the cattle guards and refused to repair them. There also appears to have been some feeling between the parties because Huter did nothing to maintain the road between the end of the county road and the point where the roadway ran to the Birk house, Huter confining his contribution to the portion used principally only by him.

On this appeal, appellants assert that the evidence did not make a submissible case on the issue of easement by prescription and that the instruction submitting such issue was erroneous.

■ On the first issue here, appellants contend that the road was a "good will" road and that its use was with the owner's permission; that such use cannot ripen into an easement. To support such theory, appellants rely on the testimony of Birk that, when he was renting the lower farm, he asked permission of the Strong girls to use the road. In determining whether a submissible case was made, evidence of the defendants must be disregarded, except insofar as it may aid the plaintiffs' case. Bunch v. Missouri Pac. R. Co., Mo.Sup., 386 S.W.2d 40, 42 [1]; White v. Burkeybile, Mo.Sup., 386 S.W.2d 418, 420 [1]. Therefore, we do disregard Birk's testimony that he asked permission to use the road. We further note that his testimony actually was that he asked for permission to cut brush along the road to permit passage by a self-propelled combine. He stated that he did not ask permission for day-to-day use of the road.

By the same token, appellants' testimony as to the existence of gates some 30 years

ago is not to be considered in determining whether a submissible case was made.

■ Viewing the evidence in the light most favorable to plaintiffs, we find no evidence that the Zellers' use of the roadway was permissive in origin. In a similar situation in Dalton v. Johnson, Mo.Sup., 320 S.W.2d 569, 573 [3–6], the court stated:

"An easement may be established by use which is shown to have been continuous, uninterrupted, visible and adverse for a period of 10 years. Smith v. Santarelli, Mo.App., 207 S.W.2d 543. The evidence in the record before us is overwhelmingly to the effect that the passageway in question had been established and had been in continuous, open and uninterrupted use by plaintiffs' predecessors in title for at least 30 years before plaintiffs purchased the property in 1946. It is true that there was no specific testimony as to the adverse character of the use. However, 'a use of land is adverse to the owner * * * when it is not made in subordination to him, and * * * [is] open and notorious.' 5 Restatement, Property, Section 458, p. 2924. Moreover, we have stated that 'in the absence of some showing that the use was permissive in its origin it is well settled that when one claims an easement by prescription and shows an open, continuous, visible, and uninterrupted use for the period of the 10-year statute of limitation, the burden is cast upon the landowner to show that the use was permissive, rather than adverse, if he claims it to have been so.' Fassold v. Schamburg, 350 Mo. 464, 166 S.W.2d 571, 572."

To the same effect are: Benson v. Fekete, Mo.Sup., 424 S.W.2d 729, 738 [1–3]; Speer v. Carr, Mo.Sup., 429 S.W.2d 266, 268 [4]; Cramer v. Jenkins, Mo.Sup., 399 S.W.2d 15, 17 [2].

■ The almost 50-year use of the roadway here was, under the evidence favorable to plaintiffs, continuous, open and obvious. Plaintiffs' evidence clearly showed, under the rule above laid down, a submissible case.

■ Appellants argue that there was evidence of matters indicating "that appellants exercised a dominion over the road which was contrary to any acquiescence in an untrammeled right of travel by others." Appellants refer to Birk's testimony that he performed most of the maintenance of the road and that he erected cattle guards across it. They also refer to the gates which one witness for respondents and witnesses for appellants testified were, at one time, across the road. Again, on the question of submissibility, this evidence may be disregarded, particularly in view of the plaintiffs' positive evidence that since 1918, when the Zellers moved onto the farm, there had been no gates across the road. At the most, evidence to the contrary was for the jury.

Appellants assert that respondents' petition alleged that there were gates across the road. However, that reference is to the obstruction which gave rise to the lawsuit. There was no admission that, throughout the history of the use of the road, gates were employed to limit its use.

■ Appellants also contend that there was no evidence of continuous use for the statutory period. They argue that inasmuch as they were in possession of both tracts from 1956 to 1960, there could have been no uninterrupted possession by respondents for a 10-year period prior to institution of this action. However, under plaintiffs' evidence, the easement would have been established prior to 1956 by respondents' predecessors in title. See Speer v. Carr, Mo.Sup., 429 S.W.2d 266, 268–269 [5–6]. Defendant Birk's occupation of the dominant estate as a tenant could not have terminated the easement. There is no question of abandonment or nonuse for a period sufficient to extinguish the easement, once established.

Respondents did acknowledge that Birk had built cattle guards across the road.

However, such evidence was at best equivocal. The fact that cattle guards, not gates, were employed, might well indicate a recognition of the rights of others to unimpeded use of the road.

We conclude that plaintiffs' evidence made a submissible case on the theory of an easement by prescription. However, the judgment in plaintiffs' favor on Count I must be reversed because of an erroneous instruction to the jury. The plaintiffs' verdict-directing instruction told the jury that its verdict should be for plaintiffs if it found the essentials of a prescription easement or, in the alternative, if it found "that the road is the only way plaintiffs have to reach their land."

Count I of plaintiffs' petition was based upon a claim of easement by prescription. The petition did allege that the road was the only route by which plaintiffs could reach their farm. However, paragraph 6 of plaintiffs' petition stated:

"6. Plaintiffs claim title to an easement over the road described hereinbefore by prescription as a result of their use of same for a period exceeding ten years."

The petition contained a second count, invoking "Section 228.340, Revised Statutes of Missouri, 1959 as amended," for the establishment of a private way of necessity. Prior to the trial, the following colloquy took place between counsel for defendants, Mr. Lowes, and counsel for plaintiffs, Mr. Stephen N. Limbaugh:

"MR. LOWES: * * * Steve has informed me that he intends to just not put on his proof with respect to Count II and what we'll be trying before the jury today is on Count I and then you'll be hearing in addition Count III. Is that right, Steve?

"MR. STEPHEN N. LIMBAUGH: Yes. Of course, I have alleged necessity in Count I in paragraph 4.

"MR. LOWES: Yes, that is part and parcel of your adverse possession.

"MR. LIMBAUGH: That's right. Count II, however, is establishing a private road and I'm not going to go into that right now."

■ Under the plaintiffs' petition, there was no basis for the submission of a claim of easement by necessity. Although there was some testimony that the road afforded the only access to plaintiffs' farm, the case was not tried on the theory of an easement by necessity and that issue should not have been submitted to the jury. The error in doing so requires a reversal of the judgment on the jury's verdict under Count I. "It is elementary that the instructions submitting the plaintiff's case must be in accord with the theory of his petition, and that instructions which authorize a recovery upon a ground not relied on in the petition are fatally erroneous." White v. Thompson, Mo.App., 176 S.W.2d 53, 57 [7–10]. See also Wilt v. Waterfield, Mo. App., 310 S.W.2d 24, 28 [1, 2].

■ Respondents urge that we should affirm the judgment because all of the evidence showed that plaintiffs were entitled to an easement by necessity. We cannot affirm on a theory not covered by the pleadings and not actually presented to the trial court. We note, in this connection, that the surveys of both parties showed that the roadway touched plaintiffs' farm at its northeast corner, near the point where the road turned south. Certainly, insofar as way of necessity is concerned, some explanation would be called for to show why access at that point would not meet the requirement of a way of necessity. That such issue was not pursued is, of course, understandable in view of the theory of plaintiffs' petition and the theory upon which plaintiffs' counsel presented plaintiffs' cause of action.

■ We do not consider the specific allegations of error as to Count III, the injunction. In order to avoid the possibility of inconsistent judgments on Counts I and III, the decree of injunction must also be

set aside. Bramblett v. Harlow, Mo.App., 75 S.W.2d 626, 633 [17], [18]; Jackson v. Farmers Union Livestock Commission, 238 Mo.App. 449, 181 S.W.2d 211, 222 [21, 22]. Therefore, the decree and judgment on Count III is set aside and the entire cause remanded for a new trial.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HENLEY, P. J., STORCKMAN, J., and HOLMAN, Alt. J., concur.

SEILER, J., not sitting.