WOLF DRABINSKY, Plaintiff, *v.* THE SEA GATE ASSOCIATION. Defendant.

Supreme Court, Kings County, June, 1923.

Injunctions — private residential parks — owners may adopt and enforce reasonable regulations as to access — what is an unreasonable regulation.

Plaintiff is the owner of premises within a private residential park. Defendant is a corporation formed by the property owners within the park and is the owner in fee of the street subject to the easements of the property owners. Plaintiff is not a member of the corporation and never applied for membership. Access to the homes of the owners has never been free to the public. Owing to the development of the adjacent lands on Coney Island as a popular resort defendant adopted more stringent regulations for admission to the park. Plaintiff's predecessors in title conformed to the regulations then in force and plaintiff has conformed to the regulations until recently, and has paid certain assessments to defendant. Plaintiff now seeks to enjoin the defendant from enforcing certain regulations, particularly as to the limitation of the number of guests allowed entrance on any one day to any one destination, with certain exceptions, and requiring tradesmen to have the request of three property owners or lessees in order to obtain an admission card. *Held,* that it is lawful for the property owners in such a private residential park, through their association, to adopt such reasonable regulations relative to access as are necessary to preserve its essential character, and a person knowing the private character of the community and the regulations cannot buy property in the park and then have the aid of a court of equity to annul the regulations and make the place a popular resort contrary to the wishes of the majority of the property owners.

The regulation as to tradesmen, however, is unreasonable, and plaintiff may have judgment enjoining the enforcement of this regulation without prejudice to the adoption and enforcement by defendant of a modified regulation providing for the issuance of tradesmen's cards on a request signed by any property owner or lessee. Judgment for the defendant dismissing the complaint on the merits in all other respects.

SUIT for an injunction.

*H. S. & C. G. Bachrach (Herman S. Bachrach,* of counsel), for plaintiff.

*Albert W. Meisel (Meier Steinbrink,* of counsel), for defendant.

BENEDICT, J. The plaintiff sues to restrain the defendant from enforcing certain rules which it has made and caused to be printed

relative to admission to the private residence inclosure known as Sea Gate at the western end of Coney Island.

Sea Gate was started as a real estate development by the Norton Point Land Company, which caused the property to be laid out in streets and plots and mapped and the map to be filed in the register's office of Kings county. The map contained a statement that it was not the intention to dedicate the streets to the public; and the streets never have become and are not now public streets, but are owned, maintained and controlled by the defendant.

Lots were sold by the Norton Point Land Company to various persons by reference to the map, and the purchasers thus acquired private easements of access over the streets laid down on the map. The fee of the streets was, however, reserved by the Norton Point Land Company.

The development was begun about 1892, and about 1899 the defendant corporation was formed by the property owners and took over the administration of the streets. In 1901 the Norton Point Land Company conveyed the fee of the streets to the defendant, subject to the easements of the property owners, and of itself as to property remaining unsold. The defendant has since controlled the streets and has exercised certain functions of a governmental and administrative nature within the inclosure, maintaining a police force, taking care of the water supply (until the water supply system was turned over to the city) and the sewer system, and regulating other communal matters. The city police force does not police the inclosure.

Sea Gate has always been inclosed. It is, of course, surrounded by water except on the eastern side, where a fence has always been maintained, extending across Coney Island from sea to bay, with certain gates, which have always been guarded, and admission to the inclosure, and consequently access to the properties of the plot owners, has never been free to the public, but always subject to certain restrictions. There were regulations requiring the identification of visitors, but those were not printed, and for a number of years the guards found it sufficient in order to preserve the character of the section as a private residential park to require each person seeking admission to state to whose house he was going. If the person seemed in any way subject to suspicion he was followed, and if it appeared that he did not go to the place named he would be ejected. With the increase of the population within the inclosure and the development of the adjacent lands on Coney Island as a popular resort attracting great crowds of people, it was deemed necessary to adopt more stringent regulations for admission to Sea Gate, and consequently in June, 1919, a pass

system was inaugurated, with different forms of passes for property owners, members, lessees, members of residents' families, guests, servants, tradesmen, etc. These regulations have since been amended in some particulars. The mere statement by an applicant for admission that he wishes to go to the house of a resident for some legitimate purpose is no longer accepted, but persons without passes have to be identified. The new regulations were printed in a booklet issued about the time of their adoption; and other booklets have since been issued containing the amendments. Apparently the latest revision was on June 13, 1921. It is the continued enforcement of these new regulations which plaintiff, as he states in his brief, seeks to enjoin; but the demand for judgment in his complaint asks an injunction against any restrictions whatever.

The premises in Sea Gate now owned by plaintiff were conveyed by the Norton Point Land Company to Jacob W. Mack in July, 1900. Mack conveyed to Jennie Heyman and Ella Heyman in September, 1907, the deed not having been recorded, however, until April, 1912. The Misses Heyman conveyed to Max Blitzer in January, 1920, and he and his wife conveyed to plaintiff in November, 1920. Mack, the Misses Heyman and Blitzer were members of the defendant association, and paid dues which were used by the association in the carrying on of its administrative and governmental functions, including the enforcement of the regulations as to admission, and Mack was for a time an officer and director of the association. All of them conformed without objection to the regulations made by the defendant relative to admission to Sea Gate as existing during the period of their ownership. The new regulations were first made while the Misses Heyman still owned the premises now owned by plaintiff. Plaintiff himself never became a member of the association — never applied for membership, in fact. But he conformed to the regulations without objection until recently, and paid to the defendant certain sums assessed against his property, one of which assessments was made during the ownership of Blitzer.

It is quite true, as contended by plaintiff, that his property cannot be burdened with restrictions running with the land not contained in the deeds under which he claims, or in some deed or equivalent instrument by which he is bound. But that is not the question here involved as I view it. It is also undoubtedly true that plaintiff, or any other property owner in Sea Gate, has a right of access to his premises over the defendant's streets for himself, members of his family, servants, *bona fide* guests, and other persons visiting him or his premises for legitimate reasons,

Supreme Court, June, 1923.                    [Vol. 121

business or social.   But I hold that it is lawful for the property owners in such a private residential park, through their association, to adopt such reasonable regulations relative to access as are necessary to preserve its essential character.   And no person, knowing the private character of the community, and how it is managed, and knowing that there are regulations enforced as to admission and access, can go in there and buy property, and then have the aid of a court of equity to annul all such regulations and make the place a popular resort, contrary to the wishes of the majority of the property owners.   Plaintiff does not claim that he did not have full notice of these conditions before he bought his property.

The regulations in no way deprive plaintiff of his easements; they are designed merely to secure the legitimate exercise of those easements, and prevent the abuse thereof, in the interest of all property owners and inhabitants of Sea Gate, taking into consideration its character as a private residential park.   The printed regulations respecting admission seem to me reasonable.   Plaintiff complains especially of the second rule which reads as follows: "2. Except in the case of established and recognized boarding houses and inns, the Guards will not permit the entrance of more than ten guests on any one day to any one destination, except as a special privilege for such special occasions as weddings, funerals, receptions or entertainments, of which the Sea Gate Association, through its office, shall have been notified in advance and for which it shall have issued a permit."

Plaintiff claims that he has the right to have as many guests as he desires at one time.   It appears, however, by the evidence that large numbers of persons, having gained entrance by asking for some particular person, or by presenting cards signed by residents, have neglected the formality of going to the residences of their alleged friends and have proceeded at once to the beach and gone in bathing, even changing their clothes in public view. Such abuses, if continued, would entirely destroy the privacy of the place, and make the beach virtually a public bathing place. If a resident wishes to have a larger number of persons present for any legitimate purpose at any one time, as for a wedding, a funeral, a party or other social function, it is always possible to make arrangements therefor.   Plaintiff has also much to say about the right to deal with the tradesmen of his choice.   There is some merit in his contention here.   Regulation No. 6 requires tradesmen to have the request of three property owners or lessees in order to obtain admission cards.   I am inclined to think that that is unreasonable, unless some abuse be shown, and none has been.

A tradesman's card should be issued on the request of one owner or lessee. The provision contained in regulation No. 8 as to identification of visitors without passes is, I think, entirely reasonable in view of the abuses to which I have referred. And I find nothing in the other regulations to which plaintiff can properly object.

It is apparent, except in the matter of the tradesmen's admission cards, that plaintiff has not been denied the use of the easements to which he claims to be entitled, but only that the association has taken such steps as were necessary to see that the easements were being exercised for a legitimate purpose and in a legitimate way. I can see nothing improper in this.

The conclusion which I have reached is in no way in contravention of the cases of *Thousand Island Park Assn.* v. *Tucker*, 173 N. Y. 203, and *Biggs* v. *Sea Gate Assn.*, 211 id. 482. The former involved the right of a person from whom supplies had been ordered by residents by post card to deliver the merchandise, despite a regulation that no one should traffic in the park except the association or those authorized by it. The latter involved the right of a property owner in Sea Gate to have water and sewer connections. In the opinion rendered at Special Term, a copy of which is annexed to plaintiff's brief, Mr. Justice Kelly, in upholding the right claimed by plaintiff to have her house connected with the water mains and sewer system of the defendant, said: " Certainly that company [the Norton Point Land Company] and the defendant [the Sea Gate Association] as its successor could prescribe reasonable rules and regulations for the use of these facilities." In like manner the defendant, as I have already intimated, has the right to prescribe reasonable regulations for admission to Sea Gate and the use of the streets for access to the premises of the property owners.

Plaintiff expressly says that he does not object to the maintenance of the gate, and to the requirement enforced prior to the printed regulations that applicants for admission other than residents shall state what resident they wish to visit. But on the plaintiff's theory of the case that no restrictions upon his easement of access not contained in the deeds under which he derives title are lawful, the earlier restrictions are no more lawful than the more recent ones, and the granting of the relief asked for will necessarily result in throwing open Sea Gate to the public.

In my opinion, so long as defendant assumes to legislate as to the use of the streets in the inclosure, every property owner is entitled, if he so desire, to be a member of the association. But that question is not before me in this action, as the plaintiff has not been denied membership.

Judgment for the plaintiff enjoining the enforcement of regulation No. 6, but without prejudice to the adoption and enforcement by the defendant of a modified regulation which shall provide for the issuance of tradesmen's admission cards on a request signed by any property owner or lessee, and judgment for the defendant dismissing the complaint on the merits in all other respects. No costs. Submit requests to find within five days.

Judgment accordingly.