MIDDLESEX CONCRETE PRODUCTS AND EXCAVATING CORPORATION, A NEW JERSEY CORPORATION, JOHN ABATEMARCO, HELEN LEIMPETER, AND JOHN F. LEIMPETER, PLAINTIFFS-APPELLANTS, v. THE BOROUGH OF CARTERET IN THE COUNTY OF MIDDLESEX, A MUNICIPAL CORPORATION, AND ALEXANDER COMBA, TREASURER OF SAID BOROUGH OF CARTERET, DEFENDANTS-RESPONDENTS.

Argued October 21, 1958—Decided November 17, 1958.

*Mr. Melvin J. Koestler* argued the cause for plaintiffs-appellants (*Messrs. Koestler & Koestler,* attorneys; *Mr. Melvin J. Koestler,* of counsel).

*Mr. Roland A. Winter* argued the cause for defendants-respondents (*Messrs. Jacobson & Winter,* attorneys; *Mr. Lewis S. Jacobson,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Plaintiffs alleged unlawful diversions of moneys raised by bond issue for a capital improvement and sought a judgment for the restoration of the fund and a restraint against further illegal inroads upon it.   On cross-motions for summary judgment, judgment was entered for defendants, with, however, an injunction against any payments out of the fund for a period of six months or until the further order of the court.   On our own motion, we certified plaintiffs' appeal before the Appellate Division considered it.

The facts were stipulated.   By ordinance adopted and amended in 1951, defendant municipality authorized improvements relating to a sewer system and the issuance of bonds under the Local Bond Law, *R. S.* 40:1–1 *et seq.* The ordinance fixed the maximum amount of the bonds at $2,600,000.

*R. S.* 40:1–55 provides that "In determining the cost of an improvement or property to be financed under this article, the following items may be charged as part of the cost and be financed under this article by the issuance of obligations, but no obligations shall be issued to finance such items unless the total amount included under this section

be separately stated in the * * * municipal bond ordinance." The items thus referred to include interest for a limited period, "engineering and inspection costs and legal expenses, in which may be included a reasonable proportion of the compensation and expenses of the engineering and legal staffs of the municipality," and the cost of issuance of the obligations including printing advertising "and legal expenses." The ordinance, making specific reference to the cited section of the statute, fixed for these items "an aggregate amount of not exceeding $164,000."

The sum realized from the bond issue (including accrued interest) was $2,600,885.46. By April 1954 the expenditures totaled $2,379,257.47, leaving a balance in the capital improvement fund account of $221,627.99. Among the expenditures as of that date was the total of $194,049.72 apparently attributable to the items described in *R. S.* 40:1-55 for which $164,000 has been allocated in the ordinance. The breakdown in the record shows some small items which are uninformatively described but defendants appear to concede they are within the mentioned category. Hence, at this stage, $30,049.72 had been disbursed out of moneys earmarked for the capital improvement itself. Plaintiffs seek restoration of that sum.

Additional withdrawals thereafter were also challenged in this suit. They relate to the defense of another action instituted by the corporate plaintiff herein in July 1953 to recover $227,693.01, representing the retained balance of 10% on the engineer's certification of work done under contracts awarded to that plaintiff on the sewer project, plus additional claims for some $1,200,000. To defend that action and to maintain its counterclaim, the borough, without formal action expressly authorizing that course, dipped into the capital improvement fund account to the extent of $81,998.66. Of this sum, $10,500 was paid to an engineering firm and $71,498.66 to counsel specially retained for that litigation, which payments were in addition to other sums paid to counsel out of annual budget appropriations.

█ Promptly upon learning of these expenditures and also of the further withdrawal of $111,798.31 for purposes not disclosed in the record, plaintiffs brought this action. The borough immediately restored the sum last mentioned, but resisted the suit with respect to the sums of $30,049.72 and $81,998.66 described above. Before us, defendants conceded these disbursements from the capital improvement fund account were unauthorized. The concession is correct. *Loudenslager v. Atlantic City,* 80 *N. J. L.* 658 (*Sup. Ct.* 1910), affirmed, 82 *N. J. L.* 530 (*E. & A.* 1911); *Heston v. State Board of Education,* 89 *N. J. L.* 486 (*Sup. Ct.* 1916); 15 *McQuillin, Municipal Corporations* (*3d ed.* 1950), § 43.68, *p.* 598. *R. S.* 40:1–55, quoted above, explicitly confines the charges which may be financed by the bond issue to the items described in that section and to the extent fixed in the ordinance, to wit, $164,000.

█ But defendants say that if they prevail in the action brought by the corporate plaintiff for the retained percentages and other damages (the protracted trial of that suit is still in progress), there will be no harm since all others concerned with the improvement have been paid in full. Implicit is the erroneous assumption that the excess of the funds raised over the cost of the improvement could be transferred to the general funds of the borough and be used for current expenses. After providing that the proceeds of the sale of the bonds "shall be applied only to the purposes for which such obligations are authorized," *R. S.* 40:1–85 (amended by *L.* 1953, *c.* 312 in respects not here pertinent) expressly directs that if any part of the proceeds are not necessary for such purposes, such excess "shall be transferred to any reserve or sinking fund for the retirement of debt or may by ordinance be appropriated to and used to finance the cost of any other purpose or purposes which have the same or a longer period of usefulness and which this act authorizes to be financed by the issuance of bonds."

█ The Local Bond Law was carefully framed to foster acceptance of municipal issues by the investing public.

The procedures established to raise funds for current needs are designed to inform the taxpayers of the use to which the revenues will be put, a purpose which would be defeated if funds raised for capital projects could be diverted by transfers without statutory warrant. The legislative mandates must be obeyed. *Bauer v. City of Newark,* 7 N. J. 426 (1951). A municipality may not improvise or suggest another scheme of things. Nor may it seek to avoid or delay rectification by resort to inquiries as to "harm."

We find no substance in the remaining grounds urged by defendants.

They argue the duty to be enforced is not clear in that the municipality's right to recover the diverted sums from the payees is debatable. Defendants misconceive the point of the suit. Plaintiffs do not demand judgment for that specific redress. Rather they seek restoration of the capital improvement fund account from funds which may now be available or which can be made available by budget appropriation. The statutory duty to maintain the integrity of the capital improvement fund is clear. The obligation to replace the deficiency from some lawful source is equally plain and it is that obligation which is here enforced.

Nor are we persuaded that judgment should be denied or withheld until the recipients of the moneys are made parties defendant. The crux of the complaint is not the absence of a lawful obligation from the borough to the payees, but rather the unwarranted use of the specific fund, whether or not a lawful engagement was made for their services. The case thus differs from *Morgan v. Mayor and Council of Borough of Roselle Park,* 129 N. J. L. 231 (*Sup. Ct.* 1942), which defendants cite. Although the legality of the use of the particular fund may be a factor among others in an action by the borough against the payees, the judgment here would not itself resolve the entire controversy between them. Indeed, the issue at the moment is quite hypothetical. There is no suggestion that the borough contemplates an action of that kind; on the contrary, it argues in another connection that if it recaptured

the moneys it would be obliged to pay anew from other sources. We add that we find nothing to suggest that this issue was tendered in the trial court. At any rate, the possible influence of our judgment here upon such other proceedings, a circumstance which perhaps could have been a persuasive basis for timely intervention by the payees, neither bars this action nor suggests that elemental fairness requires this litigation to abate until the payees are brought in.

■■ The answer challenged the status of plaintiffs to maintain this action, impugned their motives, and pleaded "the suit is out of time," apparently deeming the action to be within the time limitations applicable to proceedings in lieu of prerogative writs, *R. R.* 4:88–15(*a*). Defendants' brief, however, is silent on these matters. In any event, none of the propositions has merit. We need not delay to consider the sufficiency of the interest of the corporate plaintiff, since the right of the individual plaintiffs, as taxpayers, to vindicate the legislative policy is well settled. *Crampton v. Zabriskie*, 101 *U. S.* 601, 25 *L. Ed.* 1070 (1880); *Kozesnik v. Montgomery Township*, 24 *N. J.* 154, 177 (1957). Their motives are immaterial *The Aalfo Company v. Kinney*, 105 *N. J. L.* 345 (*E. & A.* 1929); *Flemington National Bank and Trust Co. v. Sindlinger*, 1 *N. J. Super.* 581 (*Ch. Div.* 1948). And the action, brought promptly upon knowledge of the wrong, was timely. This is not a suit to review the validity of some formal action within the granted authority of the municipality transferring funds or directing their use. In fact, there was no such action. In essence the suit is to enforce a continuing obligation to repair a wrong. There was no event, prior to plaintiffs' acquisition of knowledge of the wrong, which could operate to start the running of time under *R. R.* 4:88–15(*a*). See *Schack v. Trimble*, 28 *N. J.* 40 (1958); *Lettieri v. State Board of Medical Examiners*, 24 *N. J.* 199 (1957); *Yanuzzi v. Mayor and Council of Borough of Spring Lake*, 22 *N. J.* 567 (1956).

The judgment is therefore reversed and the matter remanded with directions to enter final judgment in favor

of plaintiffs (1) ordering defendants to pay $112,048.38 into the capital improvement fund account and to include said item in the budget for the ensuing fiscal year except insofar as restoration is made prior thereto by lawful transfers of other funds; and (2) restraining defendants from disbursing any moneys in the said account as thus augmented, other than in compliance with the Local Bond Law.

*For reversal*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For affirmance*—Justice HEHER—1.