74 N.J. Super. 539 (1962)
181 A.2d 791
ALBERT LEVINSON AND JOYCE LEVINSON, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
FLORENCE M. COSTELLO, AGNES C. BELL, FRANK D. DONOVAN AND JULIA C. DONOVAN, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 7, 1962.
Decided June 5, 1962.
*541 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Joseph V. Cullum argued the cause for appellants.
Mr. Robert N. Wilentz argued the cause for respondents (Messrs. Wilentz, Goldman, Spitzer & Sills, attorneys).
*542 The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiffs own an improved ocean front lot in Long Beach Township sold and conveyed to them by reference to a subdivision map described as "Plan of Marlin Beach Section 1." The lot is numbered #9 on the said map. Defendants Bell and Costello own an unimproved lot in the same subdivision, numbered #1, and fronting on Long Beach Boulevard. Altogether there are 12 building lots in the subdivision lying between Long Beach Boulevard on the west and the Atlantic Ocean on the east. The lots are laid out in three north-south rows, each row containing four lots, one row being on the boulevard, one on the ocean and the third between them. In order to afford access to and from all the lots both to the ocean and the boulevard, which is the only public highway abutting the development, the original grantor appears to have created out of the lots conveyed two 20-foot easements of passage running from the boulevard to the ocean, each consisting of contiguous ten-foot strips reserved for said purpose out of the lots conveyed, so that one of these 20-foot passageways serves the six northernmost lots, jointly, and the other the six southernmost lots similarly. Lots #1 and #9 are each the northernmost lots of their respective rows and consequently share the same 20-foot passageway. (There are also easements of access to Barnegat Bay, lying west of Long Beach Boulevard, but these are not material here.)
This action involves a grievance by plaintiffs over the use of the passageway and of the ocean beach constituting the easterly end of their property by invitees of the defendants Costello and Bell.
The nature and objects of the easements of passage are properly to be derived from a consideration of both the subdivision plot-plan, which was introduced in evidence and shows the two sets of contiguous ten-foot strips laid out as described above, and the language of the deeds conveying lots #1 and 9 to the respective parties herein. See *543 Zeller v. Littell, 58 A. 377 (Ch. 1904) (not officially reported); Herold v. Columbia Investment and Real Estate Co., 72 N.J. Eq. 857, 14 L.R.A., N.S., 1067 (E. & A. 1907); Bozarth v. Egg Harbor City, 89 N.J. Eq. 26 (Ch. 1918). The deeds both to plaintiffs and to defendants Costello and Bell grant easements in substantially identical terms, as follows: "together with a 10 foot wide easement for vehicular and pedestrian access to and from Long Beach Blvd., a 10 foot wide easement for pedestrian access to and from the Atlantic Ocean and * * *"; and also, "together with right of reasonable use of the beach front by property owners and occupants only of the Marlin Beach development." Both deeds contain reservations out of the lots as follows: "excepting and reserving a 10 foot wide easement extending for the entire width of this lot along the southerly line thereof; said easement to be used for pedestrians and vehicles serving this and other lots on the tract and for occupancy by utilities serving this and other lots on the tract."
Except for one lot on which there is erected a duplex-type house sometimes accommodating more than one family, the improvements thus far built on other lots using the same 20-foot passageway as plaintiffs and defendants Bell and Costello are single-family dwellings. It is inferable from all the surrounding circumstances that all these structures are used primarily as summer beach residences.
The proofs indicate that the defendant Frank D. Donovan, who owns no property in the development, has frequently driven a motor vehicle onto the passageway, which is paved with gravel, and left it parked thereon alongside the plaintiffs' home for hours at a time, sometimes while going to the beach at the development, and sometimes while returning to his home nearby on the other side of Long Beach Boulevard. His and his wife's use of the beach and passageway has been by permission of the defendants Bell and Costello, to one of whom he is related. Moreover, Bell and Costello have granted permission to tenants of the Donovans, in one *544 case by a written "permit," to use the passageway for access to the ocean front of the development. Plaintiffs' suit was to enjoin these practices, the claim being that defendants Bell and Costello had no right to permit such persons as the Donovans or the tenants of the latter to use either the passageway or the oceanfront. Defendants contested the claim and urged that other property owners were necessary parties to the proceedings.
After trial, the Chancery Division entered a judgment in effect accomplishing the following: declaring the Donovans had no right to use the passageway insofar as any claim thereto was based on their ownership of lands elsewhere; enjoining the Donovans from blocking the passageway; enjoining the Donovans from using the beach front lands owned by plaintiffs except as "bona fide social guests" of Bell and Costello, that term being defined as "a person spending a social time with [Bell and Costello] upon the lands owned by them in Marlin Beach," and excluding "any one paying a consideration for the privilege of being a social guest"; enjoining Costello and Bell from granting permission to persons other than their bona fide social guests to use the passageway or the beachfront lands owned by plaintiffs "for bathing and recreational use."
This appears to be a case of novel impression on its specific facts.
Preliminarily, we reject the argument of the defendants that the language of the deeds requires the construction that there are two separate easements of ten feet each, one in favor of and one granted by each lot owner, with each having separate and distinct incidents. As indicated above, where the grants refer to a map or plat, as here, the instruments of title are to be read in the light of the map, as well as of all the surrounding circumstances. So considered, the intent of the original developer, acquiesced in by the purchasers, was to create integral 20-foot passageways, affording either vehicular or pedestrian access to the lots from Long Beach Boulevard by all who might have *545 proper occasion to go to any of the several properties, cf. Loveladies Property, etc. v. Barnegat City, etc. Co., 60 N.J. Super. 491 (App. Div. 1960), certif. denied 33 N.J. 118 (1960), as well as pedestrian access only, to the Atlantic Ocean for bathing and recreational purposes "by property owners and occupants only" of the Marlin Beach development. The primary rule of construction of easements is that "the intent of the conveyor is normally determined by the language of the conveyance read as an entirety and in the light of the surrounding circumstances." Hammett v. Rosensohn, 26 N.J. 415, 423 (1958). Important here also is the principle that "the use of the easement must not unreasonably interfere with the use and enjoyment of the servient estate." Lidgerwood Estates, Inc. v. Public Service Electric & Gas Co., 113 N.J. Eq. 403, 407 (Ch. 1933); Hyland v. Fonda, 44 N.J. Super. 180, 189 (App. Div. 1957).
We have no difficulty at all with the injunction against Donovan's blockage of the passageway with his car. In the first place, access to the beachfront, under the deeds, is to be had only by foot, and the intent and purpose of this is obvious. Secondly, the whole scheme contemplates that no one will leave a vehicle anywhere on the passageway for such a length of time as will tend to impair the free and unobstructed use of the way by others.
The more controversial aspect of the case is the extent to which lot owners in a development such as this may allow persons other than their immediate families, servants or tenants to use the beachfront (with, of course, incidental access thereto over the passageway). No case in point has been cited. Plaintiffs stress that the deeds limit such rights to "property owners or occupants only" and that there is already an excess of liberality in the terms of the injunction in permitting defendants Bell and Costello to grant such permission to bona fide social guests. We think the argument projects an unduly strained construction of the language, having in mind the surrounding circumstances. *546 Inherent in the use and enjoyment of a home, summer home or otherwise, is the practice of the customary social amenities, including the entertainment of guests. We do not regard it as a reasonable construction of the intent of the creators of this development, as manifested in the evidentiary material before us, to bar lot owners from indulgence in the ordinary and customary entertainment of social guests at their common private beach. Developers and lot purchasers who wish to prevent such a result are free to so provide expressly, either in the instruments of title or by joint voluntary agreement.
On the other hand, it is clear that it was not intended, as defendants argue, that the scope of such right should extend to generalized standing invitations by such lot owners to others to come and use the facilities at any time, whether or not as guests of the owners in the usual sense. This would not only be an unreasonable construction of the grant but would impair unduly the qualified privacy in the enjoyment of the common facilities by all the lot owners obviously contemplated by the whole scheme of the development. We believe the right of invitation of guests should accord with common practices in the entertainment of guests under such circumstances  i.e., the guest is one invited for the specific occasion or period and is in the company of the host in the sense that both are at the development at the same time. The definition of "bona fide social guest" in the injunction is too narrow. Where the hosts, as here the defendants Costello and Bell, have not erected an improvement on their lot, and therefore will not be entertaining a guest on the lot, they should not for that reason be precluded from having a guest with them on the beach. But they may not issue general passes for use of the beach as they here did.
Defendants complain, and plaintiffs admit, that on one occasion the latter allowed 14 guests of a friend to use the easement. Needless to say, if plaintiffs depart from the restrictions our decision places on defendants Bell and *547 Costello, they may imperil their own protection thereunder. But the isolated incident does not amount to unclean hands or waiver.
For the sake of expedition we will modify the enjoining provisions of the final judgment by specification thereof in the mandate. The use of the word "guest" therein is to be understood in the light of this opinion.
Defendants also complain that the owners of the three lots abutting the easement on the south, #2, #7 and #10, were indispensable or at least necessary parties, citing R.R. 4:32-1. While we agree that such persons might advantageously have been made parties, we do not regard their omission as such to be fatal. The gist of defendants' argument is that the rights of these other lot owners have been impaired by the alleged practical effect of the injunction in preventing their allowing the Donovans to go upon their respective portions of the 20-foot easement. However, we interpret that portion of the original injunction dealing with the Donovans' use of the 20-foot easement as bearing only upon the Donovans' rights insofar as based upon "their ownership of lands in Bayview Point." In any event, we are recasting the first paragraph of the injunction to make this clear and to save the Donovans' rights, if any, as guests or invitees of any lot owner whose lands abut said easement. We regard any indirect effect of this injunction in respect of the rights of the other lot owners flowing from the impact of the injunction on the Donovans (or upon Bell and Costello) as "quite hypothetical." See Middlesex Concrete, etc., Corp. v. Carteret, 28 N.J. 208, 213 (1958). Obviously the injunction cannot affect any rights of persons not parties to this action.
Judgment modified; no costs.