Joe M. **DICK**, Charlie Green, Eunice Green, Malcom Marks, James H. Amberg, Brantley Amberg and Milus Wallace, Plaintiffs-Respondents,

v.

Jack **SHANNON**, Jim Shannon, Lloyd Hall and Gene Hall, Defendants-Appellants.

No. 10963.

Missouri Court of Appeals, Southern District, Division Three.

March 11, 1980.

Edward C. Graham, Charleston, Thomas L. Arnold, Benton, for plaintiffs-respondents.

Jeffrey C. Vaughan, Joslyn, Joslyn, Vaughan & Pruett, Charleston, James E. Reeves, Caruthersville, for defendants-appellants.

MAUS, Judge.

This is an appeal from a judgment enjoining the defendants from interfering with or obstructing the use of certain drainage ditches constructed on defendants' land in 1959 and ordering the defendants to remove obstructions placed in those ditches in 1975. The parties to this action are the owners and tenants of real property adjoining on the east, south and west that portion of Big Oak State Park which is in Section 14. In Section 14 the State Park consists of the North Half, the North Half of the Southwest Quarter and the Northwest Quarter of the Southeast Quarter of that section. Plaintiffs Green own the North Half of Section 13 west of a state highway, which tract is contiguous with the east side of the

state park. Defendants Shannon own the South Half of Section 13 west of a state highway and the East Half of the Southeast Quarter of Section 14. The Shannon real property in Section 13 is contiguous with the south side of the Green property and in Section 14 the Shannon Northeast Quarter of the Southeast Quarter is contiguous with the south and east side of the state park and the Shannon Southeast Quarter of the Southeast Quarter is contiguous with the east side of the Amberg property. The plaintiffs Amberg own the Southwest Quarter of the Southeast Quarter and the South Half of the Southwest Quarter in Section 14, the East Half of the East Half of the Southeast Quarter of Section 15 and the North Half of the Northwest Quarter and the Northwest Quarter of the Northeast Quarter of Section 23. The Amberg property in Section 14 is contiguous on the east with the property of defendants Shannon and on the North with the state park. In Section 15 the Amberg Northeast Quarter of the Southeast Quarter is contiguous on the east with the state park and on the north with the property of plaintiff Dick. Plaintiff Dick owns property in Section 15, including the Northeast Quarter which is contiguous on the east with the state park.

The defendants' first allegation of error is the sufficiency of the evidence to support the trial court's determination the plaintiffs have a right to continued use of the drainage ditches. In reviewing the evidence this court must consider that the trial court has resolved all conflicts in the evidence in accordance with its express findings and the result reached. *Stenzel v. State Dept. of Revenue*, 536 S.W.2d 163 (Mo.App.1976). While on some issues there was conflicting evidence, the following is a summary of the evidence so viewed concerning the drainage of the area and the history of the drainage ditches by which the propriety of the judgment can be measured.

The natural drainage of the generally flat terrain involved was into an area known as Grassy Pond. Grassy Pond extended through the state park in a general northwest-southeast direction · onto the northwest corner of the Shannon land and the northeast part of the Amberg land. The evidence concerning the early drainage efforts is sketchy. However, there was testimony a ditch was dug in 1949 extending from the park and the land to the north owned by Big Oak Farms. In 1951 a ditch was dug on the west side of the Shannon land into the state park. The latter was said to be a community effort and to have been dug for Amberg, Green, Shannon and possibly Mabry.

In 1959 a meeting was held in the state park for the purpose of considering drainage of the area. The meeting was attended by someone representing the Green land, Shannon land, Amberg land, the Mabry land (which generally is south of the Amberg land) and the state park. Plaintiff Dick was contacted for a contribution by the tenant of the Shannon property. At this meeting a plan for ditches to drain the area was agreed upon. Most of the witnesses who attended the meeting testified nothing was said concerning maintenance or could not remember if anything was said. However, Shannons' tenant who attended the meeting said the group "agreed to dig the ditch, put up so much money and the group of us maintain the whole ditch system." As a result of this meeting and agreement, a system of ditches was constructed or reconstructed as follows: On and along the north side of the Shannon property westerly to a point near the northwest corner of the Shannon land; on and along the west side of the Shannon land northerly so as to intersect the ditch just mentioned; from this juncture westerly and northerly through the state park onto Big Oak Tree Farms and northerly through Big Oak Tree Farms to St. Johns Diversion Ditch. The total cost of the project was estimated to be $2600 to $2700. There was evidence the parties paid the following amounts: defendants Shannon $602.50; defendant-tenant Hall $500.00; plaintiff Green $471.50; plaintiffs Amberg $433.50; plaintiff Wallace $500.00 and plaintiff Dick $100.00. There was no evidence the state park contributed; however, it should be

noted that at the time of this construction the state did, by the same contractor who constructed the ditches, construct Big Oak Lake in the area of Grassy Pond. The lake was protected with levees, the construction of which created "barrow pits" which were incorporated into the ditch network. A representative of the park system directed where the ditches were to be constructed in the park. It would not be difficult to infer that the construction of the ditch network was at that time deemed to be beneficial to the development of the park.

When constructed it is conceded the ditch network functioned well. The water from the Green land drained generally south into the east-west ditch on the Shannon land. Approximately the east 30 acres of the Amberg land drained into the north-south ditch on the Shannon land. There was evidence of maintenance on the network. Each year it was dry enough, Green or his tenant graded or plowed the east-west ditch. Both ditches were periodically sprayed to kill the growth of brush and weeds. About three years after the construction, beavers started causing problems by building dams in the area between the lake and the diversion ditch. In 1964 the tenants on the Amberg land and the Green land employed a contractor to clear this area. Thereafter, the various tenants attempted to keep the ditches open by dynamiting and clearing these dams. In 1973 the Green tenant had a dragline on the Green property and requested permission to clean the east-west ditch. Permission was denied by the Shannon tenant who said they were going to build levees. The problem of maintenance was apparently accelerated by high water in the years 1973, 1974 and 1975. By 1975 the ditches had partially filled with silt and debris. However, there is substantial evidence that in 1975 "it was still draining".

Nevertheless, in 1975 defendants Shannon caused levees to be built on three sides of their land, including the west and north sides. On those sides the levees were built upon the site of the ditches constructed in 1959. There is substantial evidence to sustain the express finding of the trial court that this action "was without notice to the

other parties and the plaintiffs were thereby denied the opportunity to assist in the maintenance or improvement of the ditches." After the construction of the levees the Green land and Amberg land could not drain into the ditch network constructed in 1959. In the construction of levees, a ditch was dug inside those levees. As a result, water on the Shannon land drained to the northwest corner. At that point outside the levees the defendants Shannon had dug a hole. Water accumulating in the northwest corner of the Shannon property flowed through a culvert in the levee or was pumped over the levee into the hole and from there, as related by James Shannon it goes "[o]ut into the state park" and it disappeared.

■ The defendants' first contention is that the evidence is insufficient to establish the plaintiffs had a right to the use of the ditches not subject to termination at the will of the defendants. They argue the agreement reached in the park was too vague to be the basis of such a right. They urge that this fatal insufficiency is established by the finding of the trial court that the plaintiffs "gained certain rights to the continued use of the ditches" without giving those rights, a nomenclature or fully defining them. Such specificity in the decree was not necessary. The issue presented to and decided by the trial court was the right of continued usage of the ditches at the time the defendants constructed the levees. Such a right may be established by the conduct of the parties under any one or all of the legal theories of equitable estoppel to revoke a license, an easement by prescription, or a contract which has been performed. *Gibson v. Sharp*, 277 S.W.2d 672 (Mo.App.1955). Also see *Oliver v. Wilhite*, 227 Mo.App. 538, 55 S.W.2d 491 (1932); *Edward Runge Land Company v. Busch*, 594 S.W.2d 647 (No. 41280, Mo.App.E.D. 1980); 25 Am.Jur.2d Easements and Licenses, §§ 48 and 130. The cases cited by the defendants are not authority to the contrary. *Daudt v. Steiert*, 205 S.W. 222 (Mo. 1918) was distinguished in *Gibson*. *Dunham v. Joyce*, 129 Mo. 5, 31 S.W. 337 (1895)

may be distinguished on the same basis and there was no proof of an agreement, the expenditure of substantial consideration or continuous usage for 10 years. The decision in *Ranney v. St. Louis & S.F.R. Co.*, 137 Mo.App. 537, 119 S.W. 484 (1909) was limited to the construction of a statutory duty although the court did note the plaintiff had no part in making the ditches in question and they were temporary in nature. *Minton v. Steakley*, 466 S.W.2d 441 (Mo. App.1971), recognized and approved the doctrine of *Gibson*, but denied injunctive relief on other grounds.

■ In this case the evidence is clear there was an agreement to cause the drainage ditch network to be constructed. The evidence is equally clear that the ditch network was constructed pursuant to that agreement and paid for by the parties to that agreement, including plaintiffs Dick, Green and Amberg, or their predecessors, and by defendants Shannon. The network was used by the plaintiffs for more than 10 years. Paraphrasing the language of *Gibson*, "whether we look at the facts from the viewpoint of an equitable estoppel, or as establishing an easement by prescription, or simply as a contract which has been performed, the defendants were without right to obstruct the ditches in question." *Gibson v. Sharp*, supra, at p. 679.

The defendants argue the absence of an agreement concerning maintenance of the ditch network bars the plaintiffs' cause of action. Under the circumstances of this case, the trial court was not and this court is not called upon to allocate the expense of maintenance. See Annot., 169 A.L.R. 1148, Easements-Repair and Upkeep; 25 Am. Jur.2d Easements and Licenses, § 85. There was testimony that the tenant on the Green land sought to clean the east-west ditch with a dragline, but permission was refused with the statement they were going to build levees. Under any view, the plaintiffs were entitled to maintain the operation of the network and this is what the trial court found was denied them by the construction of the levees. The absence of an express agreement concerning mainte-

nance did not justify the defendants' obstruction of the ditches by the levees.

■ The defendants' next point is that the trial court erred in that the purpose of the drainage network was frustrated because the State of Missouri would not permit further maintenance of the ditch in the park. There was evidence the ditch in the park had been continuously maintained by clearing beaver dams between the lake and diversion ditch from three years after construction to the time the levees were built. However, to establish this point the Director of Parks and Recreation was permitted to read into the record his letter dated April 20, 1977, directed to one of the plaintiffs' attorneys. This letter recited that the Director had consulted with his staff, found no written record of an agreement to build a ditch and concluded that the Department would not permit maintenance of the ditch. Generally speaking, an easement or a license may terminate by reason of abandonment or the completion of the purpose thereof or when that purpose may no longer be accomplished by means of that easement or license. *Ball v. Gross*, 565 S.W.2d 685 (Mo.App.1978). However, this letter does not establish the termination of plaintiffs' right to the use of the ditch in question. The defendants treat this evidence as tantamount to the ultimate, effective refusal of the State of Missouri to permit such maintenance when that is not necessarily the case. But, even assuming that to be true, termination does not necessarily result. There was substantial evidence that when the levees were built the ditches, although partially filled with silt and not functioning as well as when first constructed, were still draining and the network was serving its purpose. That the ditches remaining after the levees were built were still functioning was established by evidence that water from the Amberg land reached the park by another route and water from the Shannon land, after flowing through the culvert or being pumped over the levees, in the words of James Shannon, "went into the park and it disappeared".

Concerning the defendants' next point, one of the tenant plaintiffs presented some evidence of a crop failure and sought damages therefor. However, the trial court found the evidence insufficient to establish the failure resulted from the levees. The defendants seized upon this finding and assert that in the absence of a finding of damage the court erred in granting the injunction. However, the finding of this failure of proof of damages, is not a determination the plaintiffs were not injured by the construction of the levees. There was substantial evidence to establish injury and that as found by the trial court, "[t]he plaintiffs were entitled to have the continued benefits from the drainage and the action taken by the defendants to cut off that right was not justified." Property interests, including an easement or license for drainage, may be properly protected by injunction. *Huter v. Birk*, 510 S.W.2d 177 (Mo.1974); *Edward Runge Land Company v. Busch*, supra; *Gibson v. Sharp*, supra; *Grandstaff v. Bland*, 166 Mo.App. 41, 148 S.W. 139 (1912), particularly where an invasion has been willful. *Wolf v. Miravalle*, 372 S.W.2d 28 (Mo.1963).

The defendants' last point is that the trial court erred in refusing to order the joinder of the State of Missouri and Big Oak Farms, Inc. as they allege was required by V.A.M.R. Rule 52.04. The issue in this case was whether or not the defendants could lawfully obstruct the drainage ditches constructed on their property. Within the meaning of Rule 52.04(a)(1) this issue could be fully considered and determined between the parties to this action. *Marshall v. Winter*, 250 S.C. 308, 157 S.E.2d 595 (1967). The interest which requires joinder under Rule 52.04(a)(2) "must be such a direct claim upon the subject matter of the action that the joined party will either gain or lose by direct operation of the judgment to be rendered." *State ex rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188, 197 (Mo.App.1977). Neither the State of Missouri nor Big Oak Farms, Inc. had such an interest in the subject matter of this action. The trial court did not err in refusing to order those entities to be joined. *Huter v. Birk*, supra;

*Marshall v. Winter*, supra; *Levinson v. Costello*, 74 N.J.Super. 539, 181 A.2d 791 (1962); Annot., 28 A.L.R.2d 409, Necessary Parties—Suit As To Easement. There was substantial evidence to support the judgment and it was not against the weight of the evidence and the trial court did not erroneously declare or apply the law. The judgment is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

BILLINGS, P. J., and GREENE and PREWITT, JJ., concur.