James GOWEN, Petitioner–Appellant,

v.

Maurice Cecil COTE and Louise V. COTE, Respondents.

No. 18850.

Missouri Court of Appeals,
Southern District,
Division Two.

May 10, 1994.

Guy H. Richardson, Poplar Bluff, for petitioner-appellant.

Randolph Maness, Maness & Miller, Doniphan, for respondents.

GARRISON, Judge.

Petitioner (Plaintiff) appeals from the trial court's denial of his petition for an injunction by which he sought to enjoin Respondents (Defendants) from preventing or interfering with the use of a boat ramp by his guests and invitees. We reverse and remand.

Defendants were owners of land located on the Current River which they divided into 12 lots. In 1977, all of the lot owners, including Plaintiff's predecessors in title and Defendants, entered into a "Protective Agreement." The Agreement contained restrictive covenants in addition to the following:

> Owners hereby agree to permit the owner of any lot herein described to use the boat landing situate immediately west of Lot 6 herein described; owners of Lots 7, 8, 9, 10, 11 and 12 shall bear the costs of maintaining the boat landing, pro-rata according to the number of lots owned, after the said boat landing has been concreted and completed.

The Agreement provided that the covenants were to run with the land and be binding on all parties claiming under them for a period of 25 years, after which time they would be automatically extended for successive 10–year periods.[1]

The boat landing (boat ramp) in question is apparently situated on the east side of Lot 7. Adjoining the boat ramp on the east is Lot 6. At the time of the Protective Agreement, Lot 6 was owned by Jack Smith and his wife. Lot 7, including the boat ramp, was and still is owned by Defendants. In 1982, Plaintiff purchased Lot 6 from the Smiths. The warranty deed contained the following language:

> ... also granting to second parties a perpetual easement and right to use the boat ramp situated immediately west of the land herein described, each of the aforesaid grants to run with the land herein conveyed.[2]

Defendants made no attempt to restrict use of the boat ramp by Plaintiff himself. Their evidence indicated, however, that numerous other people who were not lot owners used the ramp at Plaintiff's invitation, including times when he was not present. Defendant Maurice Cote described it as becoming a public boat ramp. In response, Defendants placed an unlocked chain across the ramp with a sign saying: "Lot Owners Only. Keep out."

Plaintiff contends that he has a right to authorize his guests and invitees to use the boat ramp, while Defendants contend that such use is restricted to the owners and their immediate families.

## STANDARD OF REVIEW

■ Our review of this court-tried case is pursuant to Rule 73.01(c), V.A.M.R. Therefore, the judgment will not be disturbed on appeal unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## OPINION

■ In their brief, Defendants raise the issue of Plaintiff's standing to bring this action.[3] Standing is akin to jurisdiction over the subject matter, *in limine*. It may be raised at any time and may be reviewed by the court *sua sponte*. *State ex rel. Mathewson v. Election Commissioners*, 841 S.W.2d 633, 634 (Mo. banc 1992). In an injunction case, the criteria is whether plaintiff has a

---

1. The Agreement also permitted amendments to the covenants. Unanimous agreement is required if the amendments occur during the initial 25–year term or any 10–year extension but a majority of the owners can amend them at the end of any such term.

2. The language contained in the deed is couched in terms of a "perpetual easement," whereas by the Protective Agreement the owners agreed "to permit" lot owners to use the boat landing. The record is unclear about whether the Smiths acquired any rights to use the boat ramp over and above those contained in the Protective Agreement. Neither party makes an issue of this point. Likewise there is no issue about which of the two documents is controlling and, since they

both refer to "use" of the ramp, we do not decide that matter.

3. In its Findings of Fact and Conclusions of Law the trial court said that there was no evidence that Plaintiff's right to use the boat ramp was threatened and that guests and invitees had no legally protected interest which was threatened by Defendants. It also considered the issue of whether Plaintiff had a right to authorize others to use the ramp and found that he did not. The question of standing, however, deals with the authority of the court to entertain the action and is separate from the merits of the particular action. *See City of Eureka v. Litz*, 658 S.W.2d 519, 523 (Mo.App.1983).

legally protectible interest at stake. *Phillips v. Missouri Dept. of Social Services*, 723 S.W.2d 2, 4 (Mo. banc 1987). "A legally protectible interest contemplates a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, immediate or prospective." *Id.* In the instant case Plaintiff is not purporting to enforce or protect any rights which third parties might, on their own, claim in the use of the boat ramp. Rather, he is seeking to enforce his personal rights, as a lot owner, to invite guests and other persons to use the facility. In this context, we believe that Plaintiff does have sufficient standing to bring the action and that Defendants' argument on the point is not well taken.

The issue raised by Plaintiff on this appeal is whether he has the right to invite and allow others to use the boat ramp. In denying injunctive relief to Plaintiff, the trial court relied on *Henley v. Continental Cablevision*, 692 S.W.2d 825 (Mo.App.1985). In that case, the trustees of a residential subdivision filed suit to enjoin use of an easement by defendant, Continental Cablevision. The trustees had originally granted a utility easement to Southwestern Bell and Union Electric who later authorized Continental Cablevision to also use the easement. The trial court dismissed the action for failure to state a claim. The appellate court affirmed. The dispositive issue was "whether or not these easements are exclusive and therefore apportionable by the utilities to ... defendant Continental Cablevision." *Id.* at 827. The *Henley* court said:

> It is well settled that where the servient owner retains the privilege of sharing the benefit conferred by the easement, it is said to be "common" or non-exclusive and therefore not subject to apportionment by the easement owner. Conversely, if the

rights granted are exclusive of the servient owners' participation therein, divided utilization of the rights granted are presumptively allowable. This principle stems from the concept that one who grants to another the right to use the grantor's land in a particular manner for a specified purpose but who retains no interest in exercising a similar right himself, sustains no loss if, within the specifications expressed in the grant, the use is shared by the grantee with others. *On the other hand, if the grantor intends to participate in the use or privilege granted, then his retained right may be diminished if the grantee shares his right with others.* [Emphasis ours.]

*Id.* at 827–28. In the instant case, the trial court relied on the language emphasized above in denying relief to Plaintiff. Defendants also rely on that language in arguing that because they retained the right to use the boat ramp, Plaintiff's sharing of his right to use it would diminish Defendants' right and, therefore, is prohibited. The language from *Henley*, however, appears to be dictum in that it was not necessary for the result and it described a scenario which did not exist in that case, i.e., the owner retaining the right to use the easement. Also, the *Henley* case did not discuss the principles governing interpretation of language used in documents granting easements.

The easements involved in *Henley* were easements "in gross" which that court described as an easement belonging to the owner independently of his ownership or possession of other land and thus lacking a dominant tenement. Plaintiff argues, in the instant case, that the easement in question is an "appurtenant easement" as opposed to an "easement in gross."[4] He contends that in the case of an appurtenant easement, the

---

4. The existence of a dominant tenement resolves any doubt as to whether an appurtenant easement is created because an easement in gross has no such dominant tenement. *Three–0–Three Inv., Inc. v. Moffitt*, 622 S.W.2d 736, 739 (Mo. App.1981). The meaning of the term "dominant tenement" and the distinction between an appurtenant easement and one in gross has been described as follows:

> A parcel of land benefited by an easement is described as the dominant estate or the domi-

nant tenement. By definition, an easement appurtenant is created for the advantage of the owner of the dominant estate. When an easement is in gross, no dominant estate exists. Bruce & Ely, *The Law of Easements and Licenses in Land*, Para. 2.02 (1988). The purpose of appurtenant easements is to benefit the owner of the dominant tenement. 3 *Powell on Real Property*, 34–21 (1992). In the instant case the easement was granted to lot owners and ran with the land.

owner of the dominant estate has the right to invite and allow guests and invitees to use the easement. This privilege does exist in connection with appurtenant easements for right of way.

> Where a way is appurtenant to an estate, it may be used by those who own or lawfully occupy any part thereof, and by all persons lawfully going to or from such premises, whether they are mentioned in the grant or not.

28 *C.J.S. Easements* § 90. An extension of Defendants' theory based on the *Henley* case would result in the illogical conclusion that retention by the servient owner of a right to use a way would require the exclusion of all others except the owner of the premises to which the way is appurtenant.

Plaintiff cites *Pouy v. Mandia,* 234 App. Div. 897, 254 N.Y.S. 536 (1931); *Parrish v. Heskett,* 241 Mich. 560, 217 N.W. 763 (1928); and *Drabinsky v. Sea Gate Ass'n,* 121 Misc. 195, 201 N.Y.S. 102 (N.Y.Sup.Ct.1923), in support of his contention that he has the right to allow guests and invitees to use the boat ramp. The *Pouy* case authorized use of an appurtenant easement by bona fide tenants and guests of the owner but did not indicate the nature or origin of the easement involved. In *Parrish,* the owner of the dominant tenement obtained an easement from plaintiffs to use their driveway for access to a garage. The court held that a tenant of the dominant owner was entitled to use the driveway as well. In *Drabinsky,* property owners had easements to use private streets located in a platted subdivision which was surrounded on three sides by water and a beach. Thereafter, the defendant association adopted regulations governing who would be admitted to the subdivision in an effort to restrict access to those who were truly guests of property owners and exclude those who were gaining access to use the beach. The court acknowledged that property owners had a right of access over the streets "for himself, members of his family, servants, bona fide guests, and other persons visiting him or his premises for legitimate reasons, business or social." *Drabinsky,* 201 N.Y.S. at 104. The court also upheld a regulation preventing entrance of more than 10 guests on any one day to any one destination in the subdivision except for special occasions which required advance arrangements.

We believe there are some distinctions between an easement used for ingress and egress to property and one used for access to a river for recreational purposes. On the one hand, a roadway is the necessary means of ingress and egress by all visitors and those lawfully needing access to a property. Clearly guests, invitees and tenants are among those whose use of a road or way permitting access to a property would normally be, in the absence of a specific restriction, considered incidental to the ownership or use of property. On the other hand, an easement for access to the Current River under the facts of this case is obviously intended primarily for the recreational benefit of the owners and therefore could reasonably be expected to be more limited. For instance, access by tradesmen could be considered as incidental to an owner's right of access to his or her property, but those persons would not necessarily be entitled to share the owner's right of recreational access to a river. A tenant of the owner, however, would normally be expected to be entitled to share both.

 In interpreting the meaning of an easement or restrictive covenant, the intent of the parties is controlling. *Wilson v. Owen,* 261 S.W.2d 19, 23 (Mo.1953); *Brown v. Redfern,* 541 S.W.2d 725, 729 (Mo.App. 1976). The entire context of the written document must be considered; unambiguous language is to be given its manifest meaning with any doubt or ambiguity being construed strongly against the dedicators; and where there is doubt as to the meaning, surrounding circumstances may be considered. *Wilson* at 23. There is authority that we may also consider the surrounding circumstances to determine the meaning of terms used in a document, even where the language is not ambiguous. *See Heigert v. Londell Manor, Inc.,* 834 S.W.2d 858, 867 (Mo.App.1992).

In the instant case, Defendants argue that actual use of the boat ramp is restricted to

lot owners only [5] and that the "Protective Agreement" as a whole indicates that the intent was to create a quiet residential area accessible to residents. The parties, however, have not cited Missouri authority concerning facts and the interpretation of language similar to that in issue here.

*Levinson v. Costello,* 74 N.J.Super. 539, 181 A.2d 791 (1962), is factually similar to the instant case. In that case plaintiffs and defendants were both property owners in a subdivision known as the "Marlin Beach" and the beneficiaries of an easement for access to the beach which authorized use "by property owners and occupants only of the Marlin Beach development." *Id.,* 181 A.2d at 793. Defendants had invited or granted permission for others to use the easement and the beach. The trial court enjoined the use by third parties except those who were "bona fide social guests" of defendants. The appellate court described the issue as "the extent to which lot owners in a development such as this may allow persons other than their immediate families, servants or tenants to use the beachfront." *Id.,* 181 A.2d at 794. As in the instant case, plaintiffs in *Levinson* relied on the fact that the easements referred specifically to "property owners." In considering that argument, the appellate court said:

> We think the argument projects an unduly strained construction of the language, having in mind the surrounding circumstances. Inherent in the use and enjoyment of the home, summer home or otherwise, is the practice of the customary social amenities, including the entertainment of guests. We do not regard it as a reasonable construction of the intent of the creators of this development, as manifested in the evidentiary material before us, to bar lot owners from indulgence in the ordinary and customary entertainment of social guests at their common private beach. Developers and lot purchasers who wish to prevent such a result are free to so provide expressly, either in the instruments of title or by joint voluntary agreement.

On the other hand, it is clear that it was not intended, as defendants argue, that the scope of such right should extend to generalized standing invitations by such lot owners to others to come and use the facilities at any time, whether or not as guests of the owners in the usual sense. This would not only be an unreasonable construction of the grant but would impair unduly the qualified privacy in the enjoyment of the common facilities by all the lot owners obviously contemplated by the whole scheme of the development. We believe the right of invitation of guests should accord with common practices in the entertainment of guests under such circumstances—i.e., the guest is one invited for the specific occasion or period and is in the company of the host in the sense that both are at the development at the same time. *Id.,* 181 A.2d at 794–95.

In the instant case we do not believe that a reasonable construction of the phrases "permit the owner of any lot herein described to use the boat landing" and "right to use the boat ramp" would, under the circumstances here, be so limited as to constitute a restriction against access by everyone except title owners of the property. We believe that "use" of the boat ramp by the Plaintiff (owner) under the facts of this case reasonably includes permitting guests [6] to use it in connection with activities in which the owner is physically participating.

Some reasonable restriction was apparently contemplated by Plaintiff. He testified as follows:

Q. Am I—Am I understanding your position correctly if I—if I say that it is your position that you feel that anybody who you ask or permit to use the ramp is entitled to use it?

A. No. Anybody that I invite to come up and go fishing with me or—they should be able to put their boat in and use it.

Q. Just has to be people that are going with you?

A. Yeah.

---

**5.** Defendants conceded that the "immediate family" of owners would be included within the meaning of that term.

**6.** There is no issue here about the right of tenants or persons other than guests and invitees to use the ramp.

The wording authorizing use by the lot owner could have been, but was not, couched in more restrictive language which would have been susceptible to Defendants' interpretation. This case is, therefore, reversed and remanded with directions to enter a judgment permanently enjoining Defendants from interfering with the use of the boat ramp by persons specifically invited by Plaintiff and exercised in connection with activities in which Plaintiff is physically participating. Such injunction would not, however, prevent the lot owners from adopting any authorized amendments to the covenants.

PREWITT and CROW, JJ., concur.